In the Matter of the WELFARE OF R. L. K., Jr. and T. L. K.

G. T. K. and R. L. K., Petitioners,

v.

STATE of Minnesota, et al., Respondents.

No. 48895.

Supreme Court of Minnesota.

Aug. 4, 1978.

William R. Kennedy, Public Defender, Hennepin County, Franklin J. Knoll, Wright Walling, Asst. Public Defenders, Minneapolis, for petitioners.

Warren Spannaus, Atty. Gen., St. Paul, Gary W. Flakne, County Atty., Deonne Parker, Asst. County Atty., Minneapolis, for respondents.

James M. Samples and John P. Borger, Faegre & Benson, for Minneapolis Star & Tribune Company, amicus curiae, and Norton Armour, of counsel.

Heard before YETKA, SCOTT and WAHL, JJ., and considered and decided by the court en banc.

SCOTT, Justice.

This is a petition for a writ of prohibition brought by G. T. K. and R. L. K., who seek an order of this court directing the judge of Hennepin County District Court, Juvenile Division (respondent), to refrain from proceeding in an action for termination of parental rights of G. T. K. and R. L. K. during such time as news reporters are present in the courtroom. We deny the petition.

In December, 1977, and February, 1978, petitions for termination of the parental rights to the children of R. L. K. and G. T. K. were filed, and a hearing on the petitions commenced in District Court, Juvenile Division, Fourth Judicial District. Among those present in the courtroom at the commencement of the hearing was a reporter for the Minneapolis Star and Tribune.[1] The attorney for the parents immediately inquired why the reporter was present. The court responded that the rules of court allow the press to observe any hearings of that court[2] and stated that the reporter had agreed not to identify the children in any story. The court also opined that "the public has a right to know how this Court conducts its business, especially in a Court having as much power as this one."

The parents' attorney then made a formal objection to the reporter's presence, explaining that "what might come out of this trial might be rather difficult for certain people in this courtroom emotionally," and requested that the hearing be private. The children's attorney took no position on the motion, but the assistant Hennepin County attorney expressed both surprise at the reporter's presence and her opinion that "the proceedings should be maintained as private, if at all possible."

The juvenile court expressed its understanding that the proceedings "should be private but not secret," and the reporter stated on the record that he would not use the name of anyone and that he would "mask the addresses." The court then overruled the objection on the basis of the "public's right to know its business" which "overrides the potential injury that's been mentioned to me."

The attorneys and court later discussed Minn.St. 260.155, subd. 1, dealing with juvenile hearings, which provides in part:

"* * * The court shall exclude the general public from these hearings and shall admit only those persons who, *in the*

---

1. Aside from the judge, members of his staff, and the reporter, the following persons were also present in the courtroom: the parents whose parental rights were sought to be terminated; their attorney; the attorney and guardian ad litem for the children; an assistant Hennepin County attorney assigned to represent the county welfare department; the foster father for the family and brother of G. T. K.; a chaplain with the Adult Detention Center; and a Hamline University law student.

2. Rule 6.4 of the Hennepin Juvenile Court Rules provides: "*Privacy.* All hearings, except contributing to delinquency proceedings, will be private and may be attended only by: (a) the parties and their counsel; (b) persons requested by a party and approved by the court; (c) *members of recognized news media who agree not to identify anyone under age eighteen;* and (d) observers authorized by the court." (Italics supplied.)

*discretion of the court, have a direct interest in the case or in the work of the court. * * * "* (Italics supplied.)

The court's interpretation of this statute was as follows:

" * * * It would appear to me that one of the very basic cornerstones of American democracy is the public's right to know how governmental power is being exercised. To that extent I think the press, as representative of the general public, does have a direct interest in the work of the Court. It would seem to me the press is clearly under the intent of the Legislature.

\* \* \* \* \* \*

"I think it would be a grave mistake to exclude a representative of the public from any hearings so that the public would be forbidden to know how this power is being exercised."

The juvenile court then denied a further motion to exclude the reporter or any other member of the news media who might appear at trial. The matter was continued so that the present petition for a writ of prohibition could be submitted to this court.

On March 24, 1978, articles describing the events of the hearing of the previous day appeared in the Minneapolis Tribune and the Minneapolis Star. These articles did not mention the names or addresses of the parents or children involved.

On appeal, the county attorney and the county welfare department decided not to take a position with respect to the issue under consideration, even though an opinion was expressed at the juvenile court hearing. The children's guardian, who expressed no view before the juvenile court, has taken a position on appeal substantially similar to that of the petitioners. In addition, the Minneapolis Star and Tribune Company was permitted to proceed amicus curiae in this appeal and to participate in the oral argument before this court.

In properly delineating the issue before us, we note that the constitutionality of Minn.St. 260.155, subd. 1, is not under attack by any of the parties.[3] The main issue then is one of statutory construction; namely, whether the juvenile court erred pursuant to Minn.St. 260.155, subd. 1, in denying petitioners' motion to exclude the news media from the juvenile proceeding.

Petitioners contend that because Minn.St. 260.155, subd. 1, excludes the general public from juvenile proceedings it necessarily follows that representatives of the general public, such as the news media, must be excluded also. They rely heavily on Minn.St. 260.011, subd. 2, which provides:

"The purpose of the laws relating to juvenile courts is to secure for each minor under the jurisdiction of the court the care and guidance, preferably in his own home, as will serve the spiritual, emotional, mental, and physical welfare of the minor and the best interests of the state; to preserve and strengthen the minor's family ties whenever possible, removing him from the custody of his parents only when his welfare or safety and protection of the public cannot be adequately safeguarded without removal; and, when the minor is removed from his own family, to secure for him custody, care and discipline as nearly as possible equivalent to that which should have been given by his parents. The laws relating to juvenile courts shall be liberally construed to carry out these purposes."

According to petitioners, the cornerstone of this policy of protecting family ties is the privacy accorded juvenile records and proceedings. They claim that to allow news media representatives to attend a juvenile proceeding over the objections of the parties would render the Minnesota juvenile court system indistinguishable from the adult criminal adjudicative process.

3. Petitioners have not asserted any constitutional right to compel private hearings. In fact, states are free to require public jury trial in juvenile cases if they wish to do so. *McKeiver v. Pennsylvania,* 403 U.S. 528, 547, 91 S.Ct. 1976, 1987, 29 L.Ed.2d 647, 662 (dictum) (1971). Furthermore, the newspaper does not contest the constitutionality of this statute which treats juvenile proceedings differently than adult court proceedings.

Petitioners also rely heavily on the 1959 Report of the Legislative Interim Commission on Public Welfare Laws, which provides:

"The [provision being construed in the present case], providing for confidential hearings, is a restatement of the first sentence of § 260.24. Wisconsin, W.S.A. § 48.25, subd. 1, the Judges' Code, page 7, the new Standard Juvenile Court Act, Section 17, and the 'Standards,' page 59, agree with the provision. * * *."

The "Standards" referred to in the above quotation are the "Standards for Specialized Courts Dealing with Children," a 1954 publication prepared by the Children's Bureau of the United States Department of Health, Education, and Welfare. Petitioners cite the following from this latter Federal publication:

" * * * Great care should, however, be taken not to embarrass unnecessarily families and children through such permission [to permit reporters to attend on condition of the promise not to publish names], *and in certain types of cases, such as adoptions, such attending should be forbidden, or allowed only with the permission of all concerned.*" Children's Bureau, U.S. Dept. of Health, Education and Welfare, Standards for Specialized Courts Dealing with Children, at 59 (1954). (Italics supplied.)

Based upon the language of this Federal report, petitioners contend that juvenile adoption hearings should be private unless the "permission of all concerned" is obtained. From this, they argue that the termination of parental rights hearing involved in this case presents more potential embarrassment than an adoption proceeding, and that thus the legislature intended termination hearings to be closed to the news media if one of the parties objects to news media presence.

This argument fails to recognize that the 1959 Report of the Legislative Interim Commission on Public Welfare Laws only mentioned the Federal report in passing and said nothing about adopting the language of this report in toto. The reference to the Federal report in the legislative history of the statute in question appears to be for the purpose of elaborating upon the provisions dealing with the discretion of the juvenile court as follows:

"The judge should have discretion under the law to decide who shall be admitted to the courtroom. * * * If juvenile courts are to function efficiently, their philosophy and practice need to be known. The judge should be allowed at his discretion to permit persons having an interest in the work of the court such as * * * representatives of the press, to attend hearings and to observe the work of the court, with the understanding that no publication be made of names of children or families involved, or their identity otherwise indicated."

If the legislature intended juvenile proceedings to be closed to the news media, it would have been easy for it to have said so in the text of the statute itself. Instead, our legislature stated, in Minn.St. 260.155, subd. 1, that while members of the general public are to be excluded from juvenile proceedings, the juvenile court may admit "those persons who, in the discretion of the court, have a direct interest * * * in the work of the court." The issue thus is whether the reporter had a direct interest in the work of the court and whether the juvenile court abused its discretion by allowing his presence at the proceeding.

Although we have not previously decided this issue, courts in other jurisdictions have fully considered it. The weight of authority is that the news media have a "direct interest" in the work of a juvenile court and it is not an abuse of discretion to allow a reporter to be present at a juvenile proceeding. In a recent case decided en banc by the California Supreme Court, *Brian W. v. Superior Court of Los Angeles County,* 20 Cal.3d 618, 143 Cal.Rptr. 717, 574 P.2d 788 (1978), a juvenile sought to exclude news media representatives from a hearing at which his fitness to be dealt with as a juvenile was being determined. The juvenile court granted the juvenile's request for a closed hearing as to the general public,

but allowed members of the news media to attend the proceedings on the condition that the names of the parties and parents not be disclosed in the media. Petitioner's claim for total exclusion of the media was based on a California statute, Welf. & Inst'ns Code § 676 (very similar to Minn.St. 260.155, subd. 1), which provided:

"Unless requested by the minor concerning whom the petition has been filed and any parent or guardian present, the public shall not be admitted to a juvenile court hearing. *The judge or referee may nevertheless admit such persons as he deems to have a direct and legitimate interest in the particular case or the work of the court.*" (Italics supplied.)

The California Supreme Court stated:

"We conclude that in vesting the judge with discretion to admit to juvenile court proceedings persons having a 'direct and legitimate interest in the particular case or the work of the court,' it was the purpose of the Legislature to allow press attendance at juvenile hearings.

"Moreover, this purpose is not inconsistent with the overall scheme of the juvenile court law. * * * Admittance of the press to juvenile court proceedings under section 676 does not frustrate this purpose as the judge can exercise control over disclosure of the juvenile's identity."

The Oregon Court of Appeals in *In the Matter of L.,* 24 Or.App. 257, 259, note 1, 546 P.2d 153, 155, note 1 (1976), similarly held that a juvenile court has discretion to admit reporters to juvenile hearings over the objections of the juvenile and other persons pursuant to Or.Rev.Stat. § 419.-498(1), which provides:

" * * * Unless the child or his parents otherwise request, the general public shall be excluded and *only such persons admitted as the judge finds have a proper interest in the case or the work of the court.*" (Italics supplied.)

In addition, the Uniform Juvenile Court Act, drafted by the National Conference of Commissioners on Uniform State Laws, addresses the present issue in Section 24, as follows:

" * * * the general public shall be excluded from hearings under this Act. Only the parties, their counsel, witnesses, and other persons accompanying a party for his assistance, *and any other persons as the court finds have a proper interest in the proceeding or in the work of the court may be admitted by the court.* * * * *" (Italics supplied.)

The Commissioners' Comment to this section provides that "[t]he section as drawn permits the court in its discretion to admit news reporters" and that "[t]his is frequently done with the understanding that the identity of the cases observed will not be published, a procedure generally satisfactory to the news media."

These authorities are extremely persuasive. The news media have a strong interest in obtaining information regarding our legal institutions and an interest in informing the public about how judicial power in juvenile courts is being exercised. The news media thus clearly have "a direct interest * * * in the work of the court" within the meaning of Minn.St. 260.155, subd. 1. In addition, under Minnesota law, this court will not interfere with the district court's exercise of discretion unless such discretion is clearly abused or exercised in an arbitrary or capricious manner. E.g., *O'Brien v. Kemper,* 276 Minn. 202, 149 N.W.2d 487 (1967). In the present case, the juvenile court clearly did not abuse its discretion in allowing the reporter to attend the proceedings as it has occasionally done for many years. The court properly recognized the newspaper's interest in the work of the court and carefully weighed the interests involved. It could perceive no subsequent harm falling upon petitioners or their children due to the presence of the reporter, who promised not to reveal the names or addresses of the parties.

Petitioners finally contend that the promise of the reporter not to publish the names or addresses of the parties does not satisfactorily protect their privacy interests since the promise allegedly constitutes an unenforceable prior restraint in violation of the First Amendment. The newspaper,

however, claims no prior restraint, and consequently petitioners are not the proper parties to raise the issue since, as a general rule, one does not have standing to assert the constitutional rights of a third party. E.g., *Singleton v. Wulff*, 428 U.S. 106, 96 S.Ct. 2868, 49 L.Ed.2d 826 (1976).

In addition, petitioners' argument misconstrues the issue as being one of prior restraint. The juvenile court made no order preventing the reporter from publishing the names and addresses of the parties. Instead, the reporter voluntarily offered not to divulge this information in keeping with the standing policy of his newspaper.

Petitioners' fears are also prematurely expressed. The newspaper has voluntarily abided by its promise to the juvenile court and there is no indication that it intends to breach that promise. Were the newspaper to breach its promise in the future, that would be a proper factor for the juvenile court to consider in exercising its discretion to permit representatives of that publication to attend subsequent juvenile hearings.

For these reasons, the juvenile court properly allowed the reporter to attend the juvenile proceeding pursuant to Minn.St. 260.155, subd. 1.

Petition denied.

WAHL, Justice (dissenting).

I respectfully dissent.

The majority opinion holds that the news media have a "direct interest * * * in the work of the court,"[1] but recognizes the continued discretion of the juvenile court judge to admit or exclude the press in a particular case. I recognize the proper and ongoing interest of the news media in the work of the juvenile court but, because I believe that the circumstances of the instant case clearly require confidential proceedings, I would find the respondent's denial of the exclusory petition to be an abuse of the court's recognized discretion.

The legislature, in its concern for children and the continued protection of family ties, has accorded privacy to juvenile records and proceedings. Minn.Sts. 260.161, subd. 2, 260.155, subd. 1. In pertinent part, the latter provides:

"* * * The [juvenile] court shall exclude the general public from these hearings and shall admit only those persons who, in the discretion of the court, have a direct interest in the case or in the work of the court. * * *"

The accompanying Interim Committee Comment to Minn.St. 260.155, subd. 1, notes that "* * * the new Standard Juvenile Court Act [of 1959] and the 'Standards' [for Specialized Courts Dealing with Children] agree with the provision." Those "Standards" clearly express concern with the unnecessary embarrassment of news media coverage of juvenile hearings and suggest that "in certain types of cases, such as adoptions, such [press] attendance should be forbidden or allowed only with the permission of all concerned." Children's Bureau, U.S. Dept. of Health, Education and Welfare, Standards for Specialized Courts Dealing with Children, at 59 (1954).

Public exposure of the proceedings to terminate parental rights in the instant case has as much, if not more, potential for harm and humiliation to the parents and children as publicizing an adoption proceeding. The parents in the present case had already attained media notoriety by their manslaughter convictions in connection with the starvation death of another child. The promise of deletion of names and addresses[2] gave no assurance of confidentiality in the instant proceedings in view of the fac-

1. Majority opinion, p. 371.

2. I have grave reservations about the binding effect of such restraints on this information. Cf. *Oklahoma Publishing Company v. District Court in and for Oklahoma County*, 430 U.S. 308, 97 S.Ct. 1045, 51 L.Ed.2d 355 (1977); but, see, *Brian W. v. Superior Court of Los Angeles Cty.*, 20 Cal.3d 618, 626, n.6, 143 Cal.Rptr. 717, 720 n.6, 574 P.2d 788, 791 n.6 (1978).

Moreover, the majority's suggestion that confidentiality will be maintained because of the juvenile judge's implicit threat to deny future news media access in the event of a breach seems to me to be 'closing the barn door after the horse is out.'

tual detail of the coverage[3] and the ready accessibility of the previously-published reports which expressly identified the parents. Under these circumstances, additional publicity would make any prospect of future reunification of the family, after parental rehabilitation, that much more difficult. Thus, the publicity would itself be an additional, subtle pressure for termination of parental ties.

This case, if any, compels recognition of the guarantees and purpose of privacy in juvenile court proceedings. I would grant the petition to exclude representatives of the news media from these proceedings.

3. Published news reports copied almost verbatim information contained in the Petition for Termination of Parental Rights. In the absence of any indication of an appropriate order permitting public inspection of these records, I can only assume that this information was obtained in violation of Minn.St. 260.161, subd. 2.