STATE EX REL. E.R., Appellant, v. FLYNN, Respondent: LEE ENTERPRISES, INC., Intervening Respondent.

Court of Appeals

*No. 77–884. Argued December 14, 1978.—Decided January 26, 1979.* (Also reported in 276 N.W.2d 313.)

38

For the plaintiff-appellant, there were briefs and oral argument by *Theodore W. Harris* of Racine.

For the defendant-respondent, there was a brief and oral argument by *John Bjelajac,* deputy corporation counsel of Racine county.

For the intervening respondent, there was a brief and oral argument by *Thomas Krohn* of *Constantine, Christensen, Krohn & Kerscher, S. C.* of Racine.

Before Moser, P.J., Brown, J., and Bode, J.

BROWN, J.   On June 6, 1978, a petition for determination of status was filed by the Racine County District Attorney in which it was alleged that E. R., a minor, was delinquent in that on June 5, 1978 he committed an armed robbery and first degree murder, contrary to secs. 943.32 (2) and 940.01 (1), Stats.

At the detention hearing held on June 6, 1978, the appointed counsel for the minor moved to have the general public and media excluded from the proceedings. Judge Flynn excluded all members of the public except the newspaper reporter for the *Racine Journal Times* owned by Lee Enterprises, Inc.

Counsel then moved to have the reporter excluded from the courtroom while the court heard arguments on why the media should be excluded. The motion was denied. Following the arguments of counsel, the motion to exclude the media from further proceedings was also denied.

On June 8, 1978, counsel for the minor brought a writ of prohibition against Judge Flynn seeking to prohibit him from continuing to allow the press to attend and report on further proceedings in the matter. Lee Enterprises, Inc., petitioned to be allowed to intervene. The intervention was permitted by John C. Ahlgrimm, Circuit Judge, in whose court the writ of prohibition was filed. Following a hearing held on June 16, 1978, Judge Ahlgrimm dismissed the writ of prohibition. The minor is appealing this order.

The sole issue on appeal is whether sec. 48.25(1), Stats., grants a trial court the discretion of permitting members of the news media to attend and report juvenile court proceedings.

Resolution of this issue turns on the proper construction to be given the statute. It was Judge Flynn's view that the statute grants a trial court the power to permit the media to be present at a juvenile court proceeding in the trial court's discretion. Counsel for the minor contends, on the other hand, that the statute must be interpreted to exclude the media at all times. The statute in question is as follows:

**48.25 Hearing.** (1) GENERAL.
The procedure to be followed at the hearing shall be determined by the juvenile court judge and may be as formal or informal as he considers desirable. The hearing may be adjourned from time to time. The general public shall be excluded and only such persons admitted as the court shall find to have a direct interest in the case or in the work of the court. The presence of the child in court may be waived by the court at any stage of the proceeding.

At the outset, we note that the constitutionality of the statute is not placed in issue by any of the parties. Thus, the question of whether the news media has the right of access to the juvenile courtroom regardless of the trial court's discretion is not before us. The issue of

whether the State by statute can constitutionally ban the press entirely from all juvenile proceedings is also not before us. Neither of these issues were raised by the parties.

Counsel for the minor argues that the intent of the statute is clearly to exclude the public from the proceedings. Allowing the press into the courtroom as a representative of the public would violate the intent of the statute. Counsel for the minor contends that Judge Flynn's determination that the media has a direct interest in the work of the juvenile court is nothing more than an artificial circumvention of the legislature's clear intent to exclude the public.

Counsel further argues that if the legislature had wanted to allow the media into the courtroom, it would have expressly made such a provision. Counsel points to sec. 48.26 (1), Stats., which specifically deals with representatives of the newspapers or other reporters of news who wish to obtain information for the purpose of reporting news without revealing the identity of the child involved. In that statute, counsel argues, the media is specifically mentioned. Therefore, if the legislature had wanted to allow the media into the courtroom it would also have specifically mentioned the media in sec. 48.25 (1), Stats.

As final support for his argument, counsel for the minor argues that sec. 48.31 (5), Stats., enacted as part of chapter 354, 1977 Wis. Laws (effective November 18, 1978) to replace sec. 48.25, Stats., excludes the press and therefore is evidence that the legislature intended to continue its exclusion of the press. Section 48.31 (5), Stats., reads as follows:

The general public shall be excluded from hearings under this chapter unless a public fact-finding hearing is demanded by a child through his or her counsel. The court shall refuse the public hearing if the victim of an alleged sexual assault objects or in the case of a non-

delinquency proceeding if a parent or guardian objects. If such a demand is not made, only the parties, their counsel, witnesses, and other persons requested by a party and approved by the court may be present. Any other person the court finds to have a proper interest in the case or in the work of the court, including a member of the bar, may be admitted by the court. Any person who divulges any information which would identify the child or the family involved in any proceeding under this chapter shall be subject to ch. 295.

Once again the legislature fails to specifically list the media as an exception to the general rule of exclusion. Members of the bar, however, are so listed. This seems to indicate, according to counsel for the minor, the type of person intended to fall within the exception, that is, court personnel, not the news media who are representatives of the public.

Judge Flynn maintains it was proper to allow the news media to attend and report on the juvenile proceedings because the news media has a direct interest in the work of the court. He believes that his ruling was not one of artificial circumvention of legislative intent. He argues that the statute grants him the discretion to permit the news media to be present. He gave his interpretation of the statute as follows:

Under Wisconsin Statutes 48.25, it stated as follows: The general public shall be excluded and only such persons admitted as the court shall find to have direct interest in the case or in the work of the court. I specifically make a finding here as I have in all matters for approximately two years that the press as representative of the public has an interest in the work of this court and the interest of what goes on in the juvenile court where juvenile delinquency is alleged relative to a particular trial . . . .

We agree with Judge Flynn and find that sec. 48.25 (1), Stats., permits a trial court in its discretion to

allow news media into the courtroom and to report on the proceedings to a limited extent.

In interpreting a statute, we must first look at the plain meaning of the statute. If after looking at the plain meaning of the statute it is still ambiguous, we must then look to intrinsic and extrinsic aids, including legislative history, in order to determine the legislative intent.

Looking at the plain, unambiguous language of the statute, it is clear that the statute was intended to exclude the general public from attendance at juvenile proceedings. The plain language of the statute also clearly provides for some exceptions to the general public exclusion. The court can admit persons who have a direct interest in the case or a direct interest in the work of the court. It is obvious, therefore, that the clear and unambiguous meaning of the statute is to allow the court to admit into an otherwise closed proceeding, those whom the court deems to have a direct interest in the work of the court.

What is not clear and unambiguous is whether news media representatives qualify as having a direct interest in the work of the court. Thus, we must first look to other related statutes and legislative history in attempting to determine whether the legislature intended to permit news media into juvenile proceedings.

The Children's Code, of which this statute is part, did envision the public as deserving some consideration as well as the child when construing these statutes. Section 48.01(3), Stats., reads, in part, as follows:

This chapter shall be liberally construed . . . . The best interests of the child shall always be of paramount consideration, but the court shall also consider the interests of the parents or guardian of the child and the interest of the public.

We read this section to mean that the legislature was concerned about the public's right to know and understand the juvenile process. Here is an obvious proclamation by our legislature that the interests of the child shall not be so predominant as to totally exclude the public interest. Therefore, the Children's Code as a whole recognizes that there is a balancing interest between the best interests of the child and the interest of the public.

Keeping this balancing test in mind, we now look at the legislative history of the Children's Code to assist in interpreting the statute. The Wisconsin Legislative Council, which promulgated "The Children's Code" in 1955, specifically noted its use of the "Standards for Specialized Courts Dealing with Children," a 1954 publication prepared by the Children's Bureau of the United States Department of Health, Education, and Welfare. One portion of that report states as follows:

> The judge should have discretion under the law to decide who shall be admitted to the courtroom. . . . If juvenile courts are to function efficiently, their philosophy and practice need to be known. The judge should be allowed at his discretion to permit persons having an interest in the work of the court, such as . . . representatives of the press, to attend hearings and to observe the work of the court, with the understanding that no publication be made of names of children or families involved, or their identity otherwise indicated. *Id.* at 59.

Taking the legislative history together with the balancing test in sec. 48.01(3), Stats., we can only conclude that the legislature included news media as persons having a direct interest in the work of the court. Yet, the legislature, also in keeping with the balancing test, left it to the discretion of the trial judge to determine on a case-by-case basis, whether the interests of the

child were in jeopardy in certain cases so as to justify barring the media from the courtroom.

Another aid which helps us in our analysis is the use of judicial interpretation of similar statutes of other states. Three states, California, Minnesota and Oregon, have fully considered statutes similar to our statute and have construed them to permit access by the media at the court's discretion.

In an *en banc* decision by the California Supreme Court, *Brian W. v. Superior Court of Los Angeles County*, 20 Cal.3d 618, 143 Cal. Rptr. 717, 574 P.2d 788 (1978), a juvenile sought to exclude news media representatives from a hearing at which his fitness to be dealt with as a juvenile was being determined. The juvenile court granted the juvenile's request for a closed hearing as to the general public but allowed members of the news media to attend the proceedings on the condition that the names of the parties and parents not be disclosed by the media. Petitioners claimed that the intent of the California statute was to totally exclude news media at all times. The California statute involved read as follows:

Unless requested by the minor concerning whom the petition has been filed and any parent or guardian present, the public shall not be admitted to a juvenile court hearing. *The judge or referee may nevertheless admit such persons as he deems to have a direct and legitimate interest in the particular case or the work of the court.* Cal. Welf. Inst. Code §676 (Deering). [Emphasis supplied.]

In interpreting this statute, the California Supreme Court stated:

We conclude that in vesting the judge with discretion to admit to juvenile court proceedings persons having a "direct and legitimate interest in the particular case or the work of the court," it was the purpose of the

Legislature to allow press attendance at juvenile hearings.

Moreover, this purpose is not inconsistent with the overall scheme of the juvenile court law . . . . Admittance of the press to juvenile court proceedings under section 676 does not frustrate this purpose as the judge can exercise control over disclosure of the juvenile's identity. *Brian W.,* 143 Cal. Rptr. at 720, 574 P.2d at 791.

The Minnesota Supreme Court has also recently decided a case similar to the one at bar. The Minnesota statute provided in part: [T]he court shall exclude the general public from these hearings and shall admit only those persons who, *in the discretion of the court, have a direct interest in the case or in the work of the court.* Minn. Stat. §260.155(1). [Emphasis supplied.] In *In Re Welfare of R. L. K., Jr. and T. L. K. v. State,* 269 N.W.2d 367, 371 (1978), the Minnesota Supreme Court stated:

The news media have a strong interest in obtaining information regarding our legal institutions and an interest in informing the public about how judicial power in juvenile courts is being exercised. The news media thus clearly have "a direct interest . . . in the work of the court" within the meaning of Minn. St. 260.155, subd. 1.

Likewise in *State ex rel. Juvenile Department of Multnomah Co. v. L.,* 24 Or. App. 257, 546 P.2d 153 (1976), the Oregon Court of Appeals was faced with interpreting a statute which said:

The hearing shall be held informally by the court without a jury and may be continued from time to time. Unless the child or his parents otherwise request, *the general public shall be excluded and only such persons admitted as the judge finds have a proper interest in the case or the work of the court. The judge may exclude the public during any portion of the hearing in*

*which it appears that the presence of the public may embarrass a witness or party or otherwise prejudice the reception of trustworthy evidence.* With the consent of the child or his parents, at any stage of the proceeding the court may separately interview the child or one of his parents. Or. Rev. Stat. §419.498(1). [Emphasis supplied.]

The Oregon Court of Appeals interpreted this statute to permit the trial court to exercise its discretion and admit the news media to juvenile proceedings.

It is readily apparent when reading the decisions of these other states that the statutes are almost a word-for-word repetition of our statute. Consequently, it is our view that these cases provide us with substantial judicial precedent. Although certainly not binding, it is persuasive to note that other courts have established a common pattern and standard mode of dealing with the mirror images of our statute. This common pattern and standard mode is to permit the trial court to exercise its discretion in admitting or excluding the news media.

In view of the legislative history of our statute, the balancing test set out in sec. 48.01(3) and the prior case law from other states addressing this same issue in relation to almost identical statutes, we hold that the news media has a direct interest in the work of the court and, therefore, may be admitted to the juvenile proceeding at the discretion of the trial court.

One of the reasons why our courts are looked upon by the public with distrust and confusion is precisely because of the lack of public awareness of the court's day-to-day work. Very rarely is a juvenile case a matter of black and white. The press has a duty and a responsibility to report the shades of gray with which our courts must work. If the press is in the courtroom and does not unduly overstep its bounds by unnecessarily causing embarrassment to the children and their families, the press can see and hear the court's work. The

results are twofold. First, there will be less misunderstanding of the difficult decisions juvenile court judges are called upon to make. We believe that the legislature did not intend to exclude from the courtroom dedicated and fair journalists determined to relate difficult information in a way that makes this vital intelligence accessible to the general public. Second, the public will be better informed on how the judicial power is being exercised in juvenile courts. As a result, on election day, the public will be better able to make an educated decision in electing the judiciary.

Therefore, counsel for the minor's argument that the intent of the statute is clearly to exclude the public from the proceedings must fail.

So, too, the argument that if the legislature wanted to include the news media into the courtroom, the legislature would have specifically so provided as it did in sec. 48.26(1), Stats., must also fail. Counsel loses sight of the fact that it is the identity of the minor the legislature seeks to protect, not his privacy. We must conclude that the legislature mentioned the news media in sec. 48.26(1), Stats., not for the purpose of giving them access to the juvenile records, but rather to specifically warn the news media that they must make a positive effort to keep juvenile names and identities confidential. We read sec. 48.26(1), Stats., as a restriction on the press's dissemination of information relating to juvenile cases, not a statute giving a special right of access to the press.

Finally, the new statute does not exclude access in the courtroom to the news media as counsel for the minor contends. The difference between the old statute which we have just construed and the new statute which is now in effect changes only the word "direct" interest

in the work of the court to "proper" interest in the work of the court. The change is cosmetic. While the legislature did make specific reference to allowing all members of the bar into the courtroom at the discretion of the trial court, this reference in no way precludes the court from determining that the news media as well as members of the bar not involved in the case have a proper interest in the case or the work of the court. The new statute is not contrary to construction of the statute involved in this case. Dismissal of the Writ of Prohibition is affirmed. The cause is remanded to Racine County Court, Branch VI, Juvenile Court Division for further proceedings.

*By the Court.*—Affirmed.