The KEARNS–TRIBUNE CORPORATION (publisher of the Salt Lake Tribune) and KUTV (Channel 2), Petitioners,

v.

The Honorable Kimberly K. HORNAK, a Judge in the Third District Juvenile Court, State of Utah, Salt Lake County, Respondent.

No. 960265–CA.

Court of Appeals of Utah.

May 7, 1996.

Michael Patrick O'Brien, Jones, Waldo, Holbrook & McDonough, and Sharon E. Sonnenreich, Kearns–Tribune Corporation General, Salt Lake City, for Petitioner The Kearns–Tribune Corporation.

Randy L. Dryer, Parson Behle & Latimer, Salt Lake City, for Petitioner KUTV.

Brent M. Johnson, Administrative Office of the Courts, Salt Lake City, for Respondent.

Virginia O. Christensen and Gregory M. Warner, Deputy District Attorneys, Salt Lake City, for the Salt Lake District Attorney.

Kim Rilling, Salt Lake City, for J.K.

Penny Heal Trask, Salt Lake City, Guardian Ad Litem for J.K.

David W. Slaughter, Snow Christensen & Martineau, Salt Lake City, for J.K.'s Father.

Jeffrey J. Hunt, Kimball, Parr, Waddoups, Brown, Brown & Gee, Salt Lake City, for Amicus Curiae Bonneville International Corporation dba KSL–TV and Society of Professional Journalists.

Before BENCH, GREENWOOD, and WILKINS, JJ.

## OPINION

WILKINS, Judge:

The Kearns–Tribune Corporation and KUTV (petitioners) seek an extraordinary writ from this court requiring Judge Kimberly K. Hornak to admit them to proceedings in the juvenile court regarding allegations pending against J.K., a minor. We deny the petition and decline to issue the requested writ.

## BACKGROUND

J.K., now fourteen years old, is accused of intentionally killing her mother on February 20, 1996, when J.K. was still only thirteen. Petitioners filed a motion with the juvenile court seeking access to the court proceedings involving J.K. After a hearing, the juvenile court denied petitioners' motion and detailed its reasoning in a memorandum decision.

The juvenile court determined that petitioners have standing to intervene in this case for the purpose of seeking access to the proceedings. Judge Hornak relied upon an analysis of Utah Code Ann. § 78–3a–33 (Supp.1995) in concluding that the juvenile court has discretion to open or close a hearing, and that petitioners have a "direct interest" in the case involving J.K. The trial court decided that unless petitioners could demonstrate that J.K. does not have a compelling interest in a closed proceeding, the existing statutory presumption of a closed hearing requires excluding petitioners. In

determining whether J.K. has a compelling interest in having the proceedings closed, the trial judge reviewed and expressly relied upon a variety of factors, including the interests of the juvenile, the interests of the press and public, Utah statutory and case law, case law from other jurisdictions with juvenile statutes the trial judge considered to be similar to those in Utah, the severity of the charged offense, and the trial judge's understanding of the national attitude and trend toward openness in juvenile proceedings.

Having reviewed and weighed these factors, the trial court determined that a national trend exists in favor of opening such a proceeding as this to the public and press, that the majority of states with similarly worded statutes have tended to admit the media, that Utah statutory and case law permits the admission of the media and public, and that the severity of the alleged offense suggests public access. However, the trial court also concluded that the interests of the juvenile, J.K., outweighed these factors, and that J.K. has a compelling interest in this instance that prevents admission of the general public, and of petitioners in particular, to the proceedings.

Petitioners complain in part that the trial court, in reaching the decision that J.K. has this compelling interest, relied upon a report from a psychiatrist who evaluated J.K. at the request of the juvenile's counsel for the purpose of resisting the motion to open the proceedings. Despite imposing on petitioners the burden of showing the juvenile has no compelling interest in a closed proceeding, the trial court prohibited petitioners access to the psychiatric evaluation of J.K., upon which the court relied. This, petitioners insist, resulted in an impossible burden for them to meet, and was error by the trial court.

The juvenile court denied petitioners' motion for access to the proceedings involving J.K., and petitioners have brought this action seeking an extraordinary writ to force the juvenile court to grant them access. In addition, they have sought an order of this court to provide them with access to the sealed psychiatric report in order to adequately present their case in support of the writ.

## ANALYSIS

### I. Repeal of Section 78–3a–33

On January 31, 1996, Utah Code Ann. § 78–3a–33 (Supp.1995), upon which the parties and the trial court relied, was repealed as part of a general recodification of the Juvenile Court Act. The language formerly included in section 78–3a–33 has been reenacted as section 78–3a–511 of the Utah Code, as found in Enrolled Copy, S.B. 44, 51st Legislature, General Session (1996) (enacted), but with one change in the language specifically at issue in this case. The reenacted section became effective upon signing by the governor on January 31, 1996. The acts for which J.K. has been charged occurred on February 20, 1996. The motion and decision by the trial court all occurred after the effective date of the new act. Therefore, there is no question that section 78–3a–511 is the law that applies in this case.

Counsel for the trial judge suggests that the reliance on the repealed statutory language effectively moots this petition, and proposes that the matter be remanded to the trial court for consideration of the impact of newly-enacted section 78–3a–511 on the issues raised by petitioners. Counsel for all other parties, for various reasons, urge us to resolve the matter without remand for reconsideration by the trial judge.

In this instance, the nature of the changes to the Juvenile Court Act are key to determining whether or not to simply remand the matter for Judge Hornak to reconsider in light of the changes made by the legislature just weeks prior to the hearings from which this petition arises. The language of section 78–3a–33 upon which the trial court relied provided, in pertinent part:

Hearings in minor's cases shall be held before the court without a jury and may be conducted in an informal manner. The court *shall* exclude the general public and admit only those persons who have a direct interest in the case or in the work of the court or who have been requested by the parent or legal guardian to be present.

Utah Code Ann. § 78–3a–33(1)(a) (Supp. 1995) (emphasis added).

The relevant portion of newly-enacted section 78–3a–511, on the other hand, provides:

> Hearings in minor's cases shall be held before the court without a jury and may be conducted in an informal manner. The court *may* exclude the general public and admit only those persons who have a direct interest in the case or in the work of the court or who have been requested by the parent or legal guardian to be present.

Enrolled Copy, S.B. 44, 51st Legislature, General Session (1996) (enacted), Utah Code § 78–3a–511(1)(a) (emphasis added). The only difference between the former and present provisions is the change of the word "shall" to "may" in the second sentence of the section. Petitioners and the district attorney argue before us that this change reflects a legislative intent to make a dramatic shift in the presumption and burden allocation of the law: That the historical presumption of closed juvenile proceedings has been changed to a presumption of openness, and that the burden of demonstrating the absence of a compelling need for closure formerly borne by those seeking access has been reversed to a burden of demonstrating a compelling need for closure borne by those seeking to close the proceeding.

 "When reviewing the grant of a petition for an extraordinary writ, the standard of review depends upon the issues presented on appeal." *Nelson v. Salt Lake County,* 905 P.2d 872, 875 (Utah 1995). Because this appeal turns on the interpretation of section 78–3a–511, it presents solely a question of law that we review without deference to the decision of the trial court. *See Nelson,* 905 P.2d at 875. Where, as in this case, we are able to resolve the questions raised by reference to the statutory language without recourse to any disputed or undisclosed factual matters more properly within the purview of the trial court, justice and judicial economy are better served by resolving the issues without remand to the trial court.

## II. Impact of Section 78–3a–511

 In interpreting section 78–3a–511, this court is guided by the principle that statutes are generally construed according to their plain language. *See Brinkerhoff v. Forsyth,* 779 P.2d 685, 686 (Utah 1989). "[W]e have nothing to do with what the law ought to be." *Hanchett v. Burbidge,* 59 Utah 127, 135, 202 P. 377, 380 (1921)). Instead, "[w]e must be guided by the law as it is. . . . When language is clear and unambiguous, it must be held to mean what it expresses, and no room is left for construction." *Salt Lake Child & Family Therapy Clinic, Inc. v. Frederick,* 890 P.2d 1017, 1020 (Utah 1995) (citation omitted). Therefore, we need seek guidance from the legislative history and relevant policy considerations of section 78–3a–511 only if we find ambiguity in the statute's plain language. *See World Peace Movement of Am. v. Newspaper Agency Corp.,* 879 P.2d 253, 259 (Utah 1994).

Section 78–3a–511(1)(a) provides, in relevant part:

> Hearings in minor's cases shall be held before the court without a jury and may be conducted in an informal manner. The court may exclude the general public and admit only those persons who have a direct interest in the case or in the work of the court or who have been requested by the parent or legal guardian to be present.

Enrolled Copy, S.B. 44, 51st Legislature, General Session (1996) (enacted), Utah Code § 78–3a–511(1)(a). The important language of this statute for purposes of the writ before us is "[t]he court may exclude the general public and admit only those persons who have a direct interest in the case or in the work of the court."

 We must decide whether this language is clear and unambiguous to determine if we must simply interpret this statute according to its plain meaning. The statute provides that the juvenile court may "admit *only* those persons who have a *direct interest* in the case or in the work of the court." *Id.* (emphasis added). This mandatory language is contrasted by the seemingly discretionary language of the previous clause regarding exclusion of the general public. The contrast between the seemingly discretionary language and the mandatory language allows the new statute to reasonably be read in at least two contradictory ways: (1) The juvenile court has no discretion to admit mem-

bers of the general public to · juvenile proceedings but instead may admit only those persons with a direct interest, or (2) the juvenile court has discretion to admit members of the general public to these proceedings. "A statute is ambiguous if it can be understood by reasonably well-informed persons to have different meanings." *Patterson v. Utah County Bd. of Adjustment,* 893 P.2d 602, 606 (Utah App.1995). Because this statute can reasonably be read to have more than one meaning, we cannot rely on its plain language to guide our interpretation. *See id.*

■ "The primary consideration in construing a statute is to give effect to the legislature's intent." *State v. Winward,* 907 P.2d 1188, 1190 (Utah App.1995). "[W]hen the statute's language is ambiguous[, we will] seek guidance from the legislative history and policy considerations" to "discover that intent." *Id.; see also State v. Lopez,* 886 P.2d 1105, 1110 (Utah 1994) ("When interpreting an ambiguous term, we try to discover the underlying intent of the legislature by looking to the legislative history . . . .").

■ The legislative history supports our first reading of the statute: The juvenile court has no discretion to admit members of the general public to juvenile proceedings but instead may admit only those persons with a direct interest in the case or in the

work of the court. Senate Bill 44 repealed section 78–3a–33 and enacted section 78–3a–511 as part of the general renumbering and recodification of the Juvenile Court Act. The legislative debates of that bill clarify that it was not intended to make any substantive changes in the law, such as granting juvenile judges discretion when they had none under existing law. In those debates, the sponsors of the bill represented that the bill contained no substantive changes, but was merely a recodification of old law.[2] Tape of Utah Senate Floor Debates, 51st Legislature, General Session (January 18, 1996); Tape of Utah House Floor Debates, 51st Legislature, General Session (January 25, 1996). In fact, substantive changes in the Juvenile Court Act could not be included in this recodification without incurring the risk of violating the mandate of .article VI, section 22 of the Utah Constitution that the subjects of a legislative bill must be clearly expressed in its title.[3] As a result, the legislative history supports our treatment of the change in wording from "shall" to "may" as being legally insignificant in this instance.

■ Given the historical presumption of openness in adult criminal proceedings as opposed to the presumption of closure in juvenile courts, it is appropriate for the legislature to clarify that the general public is to

2. Senator Hillyard, the bill's sponsor, who presented the bill to the Senate, explained that the bill was written solely to organize the juvenile laws, which had previously been very disorganized and difficult to find in the Utah Code. He stated, "This purpose [of the bill] was for one purpose only, and that was to organize it [referring to the juvenile laws]." He said that only once the bill was passed and "the tree frame" was in place, would the legislative task force begin working on substantive changes in the juvenile laws. He emphasized that there were "no substantive changes" in the bill, but that it was "just like the old laws." No senators challenged the bill, and the bill passed the Senate, in an expedited passage under suspension of the floor rules, after Senator Hillyard's above remarks. Tape of Utah Senate Floor Debates, 51st Legislature, General Session (January 18, 1996).

Representative Ellertson, who presented the bill to the House, echoed Senator Hillyard. He also explained that this bill was created because the juvenile statutes were "a mess" such that "you couldn't find anything." He explained, "This is simply a recodification. There are *no*

substantive changes. . . . You'll have to trust me on this, there are *no* substantive changes." · (Vocal emphasis of "no.") Once this bill passed and the structure of the laws was in place, explained Representative Ellertson, then the task force would begin work on the substantive part of the laws. Representative Bradford, who also was involved with the bill, added, "All this [bill] did was rearrange [the laws]" and "make them orderly. As in the Senate, no one in the House vocally challenged the bill, and the House passed it immediately following Representative Ellertson's remarks. Tape of Utah House Floor Debates, 51st Legislature, General Session (January 25, 1996).

3. The title of the Juvenile Court Recodification bill, S.B. 44, is: "AN ACT RELATING TO THE JUDICIAL CODE; RECODIFYING TITLE 78, CHAPTER 3A JUVENILE COURTS; CHANGING THE TERMS "CHILD," "JUVENILE," OR "YOUTH" TO "MINOR"; MAKING TECHNICAL CORRECTIONS; AND PROVIDING AN EFFECTIVE DATE." It is noteworthy that no mention of substantive changes is included in the title.

continue generally to be excluded from juvenile court proceedings of this type. The discretion afforded the juvenile court is in determining who qualifies as falling under one of the three categories permitted entry: (1) persons with a direct interest in the case, (2) persons with a direct interest in the work of the court, or (3) persons whose presence is otherwise appropriate and has been requested by the parent or guardian. Rules of statutory construction require us to read "general public" and the categories of persons who may be allowed into the hearing as mutually exclusive groups. One who has a "direct interest" in the case or in the work of the court is no longer a member of the class of persons described as the "general public."

Therefore, based on the statute's language and legislative history, the juvenile court may only allow petitioners to attend J.K.'s hearing if they are "persons who have a direct interest in the case or in the work of the court."

### III. Direct Interest

 Because neither section 78–3a–511(1)(a) nor the predecessor section 78–3a–33(1)(a) has been interpreted by this court or the Utah Supreme Court, "direct interest" has not yet been defined with reference to this statute. Therefore, we must define "direct interest" to the extent needed to determine whether petitioners have a direct interest in this case or in the work of the court sufficient to allow them access to the proceedings regarding J.K.

The first indication of what the legislature intended "direct interest" to mean is found in the plain language of section 78–3a–511(1)(a). The statute contrasts "persons who have a direct interest in the case or in the work of the court" with "the general public." Given the sentence's structure, it differentiates between the broad class of persons known as the *general* public, and the narrow class of persons with a direct interest. One cannot be in both classes simultaneously for purposes of the statute. Apparently, the legislature determined that the general public does not have a direct interest in these juvenile cases and may be excluded from the proceedings, despite the historical and constitutionally guaranteed right of the general public to attend and observe adult criminal trials. *Cf. In re N.H.B.,* 769 P.2d 844, 847, 849, 851 (Utah App.1989) (holding that although a presumption of openness exists in adult criminal matters, neither the United States Constitution nor the Utah Constitution require a presumption of openness in juvenile proceedings).

This interpretation is further supported by reference to the language of the prior section, 78–3a–33(1)(a), which also differentiated between the general public and those with a direct interest in the case or in the work of the court. In addition, before section 78–3a–33 was amended in the 1993 second special legislative session, the statute read as follows:

> Hearings in children's cases shall be held before the court without a jury and may be conducted in an informal manner. The general public shall be excluded and only such persons admitted, including persons whom the parents wish to be present, as have a direct interest in the case or in the work of the court; provided, however, that whenever the hearing is had on a written petition charging what would be a felony if committed by an adult, persons having a legitimate interest in the proceeding, including responsible representatives of public information media, may be admitted by the judge.

Utah Code Ann. § 78–3a–33 (1992). The first part of this older, pre–1993 version of the statute is substantially similar to the current section as well as to the language of the 1993 version of 78–3a–33(1)(a). The 1993 revision of the statute deleted the second half of the older, pre–1993 statute that allowed "persons having a legitimate interest in the proceeding, including responsible representatives of the public information media" to attend a juvenile hearing if, as in this case, the minor was charged with an offense that "would be a felony if committed by an adult." In place of this language, the 1993 statute created a new subsection (2) providing for access of the public and media in cases involving minors sixteen years of age or older, alleged to have committed offenses that would be felonies if committed by an adult. *See id.* § 78–3a–33(2) (Supp.1995). In fact,

under the pre–1993 version of this statute, the juvenile court had discretion to allow the petitioners to attend a hearing in a case like J.K.'s, for J.K.'s alleged offense would be a felony if committed by an adult. In contrast, both the 1993 version of section 78–3a–33 and the current law do not allow the juvenile court any discretion, but simply prohibit the general public and the media, including petitioners, from attending if they do not have a direct interest in the case or in the work of the court.

This pre–1993 version of section 78–3a–33 also helps us determine whether petitioners have a "direct interest" under the current statute. The old version of the statute excluded "[t]he general public," and only admitted "such persons . . . as have a direct interest in the case or in the work of the court." However, the statute also stated,

> *provided, however,* that whenever the hearing is had on a written petition charging what would be a felony if committed by an adult, *persons having a legitimate interest* in the proceeding, *including responsible representatives of public information media,* may be admitted by the judge. *Id.* § 78–3a–33 (1992) (emphasis added).

This language is particularly significant. First, through the language "provided, however," the statute grants an exception to media representatives as distinguished from other members of the general public. In addition, the statute essentially defines media representatives not as persons included within the category of those with a "direct" interest, but as "persons having a *legitimate interest* in the proceeding." *Id.* (emphasis added). Therefore, the pre–1993 version of section 78–3a–33 indicates that the legislature had previously designated media representatives as persons whose interest in juvenile proceedings such as J.K.'s was "legitimate," but did not reach the level of being "direct." This is especially illuminating because the current language of subsection 511(1)(a) is comparable to the language of the first part of the older pre–1993 version of this statute.

Petitioners argue, and the juvenile court implied in its memorandum decision, that the heinousness of the offenses of which J.K. is accused grants media representatives a direct interest in this case. However, our review of the history of this statute clearly supports the conclusion that petitioners do not have a direct interest in this case, even though it involves very serious allegations.

Section 78–3a–511(2) provides:

> Notwithstanding Subsection (1), if a proceeding is conducted on a written petition charging a minor 16 years of age or older with an offense which if committed by an adult would be a felony, the court shall admit any person to the proceeding unless closed by the judge upon findings on the record of good cause.

Enrolled Copy, S.B. 44, 51st Legislature, General Session (1996) (enacted), Utah Code § 78–3a–511(2). This language is identical to that of the post–1993 section 78–3a–33(2), with the exception of substituting the word "minor" for the word "juvenile" in the third line. As under the second portion of the older pre–1993 law, subsection (2) allows the court to admit media representatives to juvenile proceedings when the minor is charged with an offense that would be a felony if committed by an adult.

However, subsection (2) of both the post–1993 section 78–3a–33 and of the current 78–3a–511 differs from the second part of the pre–1993 statute · in two significant ways. First, the newer sections impose a strict age standard of sixteen years or older. Second, they eliminate the "legitimate interest" test and instead mandate that juvenile judges "shall" admit the public unless they find good cause to exclude them. In making this change in the statutory language, the legislature clearly intended to shift the presumption of closed proceedings for juvenile offenders to one of openness for those sixteen years of age or older who are accused of committing an act that would be a felony if committed by an adult.

Therefore, we must conclude that the legislature considered cases such as J.K.'s involving minors who are accused of committing heinous offenses—even murder—when it enacted section 78–3a–511. Subsection (2) allows the general public to attend juvenile proceedings only if the minor is sixteen years

old or older and is accused of committing an offense that would be a felony if committed by an adult. Subsection (1)(a) provides that the general public is to be excluded from all other juvenile proceedings. The legislature made the deliberate decision to exclude the general public from proceedings involving minors under sixteen years of age, even if they are accused of committing an offense that would be a felony if committed by an adult, even murder.

Other courts who have addressed similar statutory language limiting access to juvenile proceedings to those with a direct interest in the case or in the work of the court have reached different conclusions. *See Cheyenne K. v. Superior Court,* 208 Cal.App.3d 331, 256 Cal.Rptr. 68 (Cal.Ct.App.1989); *In re Welfare of R.L.K.,* 269 N.W.2d 367 (Minn.1978); *In re L.,* 24 Or.App. 257, 546 P.2d 153 (1976); *State ex rel. E.R. v. Flynn,* 88 Wis.2d 37, 276 N.W.2d 313 (Ct.App.1979). Even so, the Utah statutory and legislative history demonstrates a consistent treatment by the Utah Legislature of excluding the media from juvenile proceedings. We therefore do not adopt the views expressed by other courts, but adhere to the view expressed repeatedly by our legislature, in whom the people of Utah have reposed the power and responsibility to make such judgments.

We accordingly reject the claim of the petitioners that they have a direct interest in the proceedings involving J.K. Nevertheless, we acknowledge that the public has a right to know how public funds are being spent; how public officials, the judges, are conducting the affairs of the court; and whether or not justice is being done. Indeed, the judicial branch of government exercises authority delegated by the people to it, and its effectiveness is contingent upon the confidence of the people in the proper and lawful conduct of those affairs.

However, the public both directly and through the media may monitor the workings of the court, and of any individual judge, by attendance at the numerous hearings and proceedings which are, or easily may be, made open to the public and the media, such as those described in subsection (2) of section 78–3a–511. A variety of opportunities exist for critical review of the expenditure of public funds by the judicial branch of government in ways other than attendance at particular high profile trials. It is not necessary, however desirable it may be considered by some to be, for the media to monitor every proceeding in the juvenile court.

Historically, the juvenile courts have maintained a certain level of confidentiality to promote the rehabilitation of children while still protecting the public. As we said in *In re N.H.B.*:

> The rationale for the right of access in criminal trials is not coextensive in the juvenile court setting. Unlike criminal trials, juvenile proceedings have not been historically open. Further, public access does not play as significant a role in the proper functioning of the juvenile justice system as it does in the adult system. In contrast to adult criminal procedures, juvenile court proceedings do not involve criminal convictions, but are regarded as civil proceedings. Because juvenile proceedings are not intended to punish, public access would not serve as a check against unjust conviction and the undeserved taint of criminality. Indeed, confidentiality of juvenile proceedings is designed to avoid such taint.... Confidentiality furthers society's interest in rehabilitation of youthful offenders and their integration as law-abiding adults. Public access to juvenile proceedings would detrimentally affect those purposes of the juvenile justice system. We find that the state has a compelling interest in maintaining the confidentiality of juvenile court proceedings which outweighs the media's right of access.

769 P.2d 844, 849 (Utah App.1989) (citations omitted).

We held in *N.H.B.* that no presumption of openness in juvenile proceedings is required by the First Amendment of the United States Constitution, and that no such presumption exists under the Utah Constitution:

> Although public access is important to foster informed public involvement in government and to enhance public confidence in the judicial branch, we find that, in light of the purposes of the juvenile justice system and the probability that public access

would severely undermine that system, ... the people do not have a constitutional right of public access to juvenile court proceedings in Utah.

*Id.* at 851.

## CONCLUSION

We hold that section 78–3a–511 restricts access to the proceedings in the juvenile court involving J.K., a person under sixteen years of age, to only those persons who have a direct interest in the case or in the work of the court. We hold, as a matter of law, that neither the general public nor the media have a direct interest in the case or in the work of the court. As such, the juvenile court has no discretion to admit either the general public or the media to proceedings involving J.K. It is therefore unnecessary to address the merits of the motion made by petitioners for access to the psychiatric evaluation upon which the trial judge relied. The motion to receive and review that report is denied.

The petition for extraordinary writ is denied.

BENCH and GREENWOOD, JJ., concur.