STATE of Wisconsin, Plaintiff-Respondent,

v.

Lance W. TEMBY, Defendant-Appellant.

Court of Appeals

*No. 81–2017–CR. Submitted on briefs May 5, 1982.—*
*Decided June 23, 1982.*
(Also reported in 322 N.W.2d 522.)

For the defendant-appellant the cause was submitted on the brief of *David C. Niblack*, state public defender.

For the plaintiff-respondent the cause was submitted on the brief of *Bronson C. La Follette*, attorney general, and *David J. Becker*, assistant attorney general.

Before Voss, P.J., Brown and Scott, JJ.

VOSS, P.J. Lance W. Temby appeals from a judgment of conviction on two counts of violations of the Wisconsin Uniform Securities Law, sec. 551.42(2), Stats. On appeal, he raises two issues. First, he argues that the trial court erred by allowing the state to use the deposition of a principal witness, Leo Bonelli, at trial without a showing that the witness was unavailable for trial and without a showing that an effort had been made to get him to testify at trial. Second, he contends that the trial court improperly instructed the jury by telling them that it was not necessary for the jury to find that Temby had made a statement with intent to defraud any particular person. We hold that making a statement with intent to defraud is not a necessary element of the offense. However, we believe that the trial court committed prejudicial error by admitting Bonelli's deposition without showing that the state had attempted to obtain his attendance at trial and without showing that he was unavailable. On that basis, the judgment of the trial court is reversed on both counts, and the case is remanded for a new trial.

The rather extensive facts in this case can be fairly stated as follows. In October 1978, Temby purchased a business called Locata-Place. The business sold advertising space on electronic map boards to be placed by hotels, motels and restaurants. When Temby bought the business, it had only four boards, all located in Sheboygan. Generally, the business was not doing well. To help his business expand, Temby sought and received $5,000 from

Leo Bonelli and $5,000 from Eric Larson. As consideration for the sums received, both received a thirty percent share of the franchise fee paid to Temby for the Minnesota Locata-Place franchise. Each received a guarantee that if the Minnesota franchise did not come into being, Temby would repay each man $5,000 plus twelve percent interest. No Minnesota franchise was established, and Temby was unable to repay the money.

On July 1, 1980, the Sheboygan County District Attorney filed a criminal complaint alleging that the agreement Temby entered into with Bonelli and Larson was a fraudulent "offer, sale and purchase" of a security, in violation of sec. 551.41(2), Stats.

At a hearing prior to trial, the prosecutor informed the court that Bonelli would not be present to testify at the February 24, 1981 trial. The state filed a motion pursuant to sec. 967.04, Stats., to have a deposition of Bonelli's testimony taken and used as evidence at trial. Temby objected strongly; nevertheless, the deposition was taken and subsequently admitted.

The first witness at trial, Larson, testified that he had known Temby as a social friend prior to the time that he and Temby entered into their business agreement. Larson's initial discussions with Temby about the business deal took place on July 24, 1979. Temby met with Larson and Bonelli at a restaurant. Larson admitted to drinking before and during the meeting and agreed that this may have affected his recollection of all that occurred that night.

In his testimony, Larson claimed that on July 24, Temby had told him that James Grummet was prepared to purchase the Minnesota franchise of Locata-Place for $78,000 if Temby could supply the advertising boards and a van to service them. He also claimed that Temby indicated that Larson would get a $4,000 return on his investment in the first week. Larson signed the contract the

next day. About six weeks later, Temby told him that Grummet had decided not to purchase the Minnesota franchise because his stepson had committed suicide. However, Temby told him he would run the franchise himself.

Bonelli's deposition, which was admitted at trial, indicated that he was a real estate agent who had known Temby for seven years. Temby had discussed the Locata-Place business with Bonelli in approximately twenty meetings over a period of nine months. He had indicated to Bonelli that a franchise existed in Iowa and that he intended to open similar franchises in Michigan and Minnesota. The deposition also indicated that Temby had told Bonelli that Grummet was willing to purchase the Minnesota franchise as soon as the boards were obtained from Milwaukee and were set up. Also, Bonelli stated that it was Temby's idea to include the provision in the agreement to repay the $5,000 with interest if the Minnesota franchise agreement never materialized.

Bonelli's deposition went on to indicate that he signed an agreement with Temby on July 23, 1979. On that day, Bonelli claimed that Temby had indicated to him that the Minnesota franchise agreement would generate $469,000 yearly. After signing the agreement, Bonelli talked at length with Larson. The two met with Temby at a restaurant and discussed the franchise agreement in detail the day before Larson signed his agreement with Temby. Finally, Bonelli's deposition indicated that Temby had also told him that the Minnesota franchise deal had not been closed because Grummet's stepson had committed suicide.

Not surprisingly, Temby's account of the facts culminating in separate contracts with Larson and Bonelli differs from their account. He testified that he sold the Iowa franchise to a friend of his from the marines. Also, he stated that Grummet initially exhibited a genuine

interest in the business. Over a period of time, that interest lessened, and he decided not to invest in the Minnesota franchise. He claims he only sought a loan from Bonelli but agreed to a different agreement when Bonelli suggested purchasing a portion of Temby's royalty fees from the Minnesota franchise. Temby claims that he wrote the agreement, and Bonelli signed. On July 24 when Temby and Bonelli met Larson at the restaurant, Temby claims that Bonelli was so enthusiastic about the agreement that he told Temby to describe it to Larson. Larson expressed a similar interest, and he also entered into an agreement with Temby identical to Bonelli's.

The jury found Temby guilty on both counts of violating the Wisconsin Uniform Securities Act. The trial court entered a judgment of conviction on March 30, 1981, and Temby appeals from the judgment.

First, Temby argues that the court erred by admitting Bonelli's deposition into evidence. He claims that it should not have been admitted without a prior showing that the state had made an attempt to secure his appearance and a showing that he was unavailable to testify. Temby argues that the state had not made a showing of unavailability.

On appeal, the state agrees that it did not establish Bonelli's unavailability. In *Sheehan v. State,* 65 Wis. 2d 757, 765, 223 N.W.2d 600, 604 (1974), the supreme court held:

Depositions of witnesses are allowed in criminal cases. *State ex rel. Drew v. Shaughnessy* (1933), 212 Wis. 322, 249 N.W. 522. Sec. 967.04, Stats., so provides. However, if the witness is not in fact unavailable or if the prosecutorial authorities have not made a good-faith effort to obtain his presence at trial, the use of the deposition does not fit within the exception to the confrontation requirement. *Barber v. Page* (1968), 390 U.S. 719, 88 S. Ct. 1318, 20 L. Ed. 2d 255.

Under this test, our review of the record establishes that no adequate showing of unavailability exists sufficient to satisfy the requirements of the confrontation clause. Bonelli claimed that he could not testify at trial because he was going to be at a real estate convention in Las Vegas on the day of the trial. Such a temporary absence does not amount to unavailability as defined by sec. 908.04, Stats. Accordingly, we agree with Temby and the state that Bonelli's deposition should not have been admitted at trial.

Although the state concedes that Bonelli's deposition should not have been admitted at trial, it argues that this only requires reversal on the count violating the securities law through the statements he made to Bonelli. The state argues that the conviction on the securities law count related to the statements Temby made to Larson is still valid. The state contends that Bonelli's testimony did not concern Temby's representations to Larson. We cannot agree.

At the hearing on the state's motion to allow it to take Bonelli's deposition for use at trial, the prosecutor stated:

Mr. Bonelli's testimony would not be substantially different from Mr. Larson's and it is somewhat intertwined since there was a joint meeting with all three parties . . . . But I do feel that the jury is going to have ample opportunity to see all the evidence and what they decide as to one count I think will relate to the second count because there's no real difference between these two counts . . . .

Further, in ruling on the admissibility of Bonelli's deposition, the trial court ruled:

Mr. Bonelli's not only a witness but a material witness and his testimony goes to support count two [the count related to Temby's statements to Larson] of the information. On this ground the Court would grant the motion

to take the deposition of Mr. Bonelli and the Court will not grant any further continuance in this matter.

Additionally, cross-examination of Bonelli dealt with the conversation Bonelli, Larson and Temby had on July 24, 1979. Based upon our review of the record, we agree that Bonelli's deposition dealt with matters in that count of the complaint which concerned Temby's statements to Larson. On that basis, we reverse and remand for a new trial on both counts because of Bonelli's improperly admitted deposition.

Although we reverse on the previous issue, we address the second issue in the interests of judicial economy. The second issue is likely to arise again at a new trial.

Temby argues that the trial court erred in its instructions to the jury. The trial court instructed the jury that "[i]t is not necessary that you find that he [Temby] made the statement with the intent to defraud any particular person." Temby argues that intent to defraud is an essential element of the offense.

Section 551.41, Stats., declares:

**Sales and purchases.** It is unlawful for any person, in connection with the offer, sale or purchase of any security in this state, directly or indirectly:

(1) To employ any device, scheme or artifice to defraud;

(2) To make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they are made, not misleading; or

(3) To engage in any act, practice or course of business which operates or would operate as a fraud or deceit upon any person.

Violation of this statute is made criminal by sec. 551.58, Stats., which states:

**Criminal penalties.** (1) Any person who wilfully violates any provision of this chapter except s. 551.54, or any

rule under this chapter, or any order of which the person has notice, or who violates s. 551.54 knowing or having reasonable cause to believe that the statement made was false or misleading in any material respect, may be fined not more than $5,000 or imprisoned not more than 5 years or both. Each of the acts specified shall constitute a separate offense and a prosecution or conviction for any one of such offenses shall not bar prosecution or conviction for any other offense.

To determine if intent to defraud is an essential element of the criminal offense, it is necessary to analyze both of the above provisions. *See State v. Cox,* 566 P.2d 935, 939 (Wash. App. 1977), *cert. denied,* 439 U.S. 823 (1979).

Section 551.41, Stats., makes no reference to intent to defraud. The word "intent" appears nowhere in the statute. We see no ambiguity in the statute on the issue of intent. When statutory language is unambiguous, this court will arrive at the intent of the legislature by giving the language its ordinary and accepted meaning. *State v. Engler,* 80 Wis. 2d 402, 406, 259 N.W.2d 97, 99 (1977). The absence of the word "intent" is a clear indication that intent to defraud is not an element of the offense.

The decision of the United States Supreme Court in *Aaron v. Securities and Exchange Commission,* 446 U.S. 680 (1980), lends support to this position. That case dealt specifically with whether intent to defraud was a necessary element to be proved under 15 U.S.C. § 77q(a) (2) and (3),[1] the federal statute dealing with fraudulent

---

[1] This statute, which is almost identical to sec. 551.41, Stats., states:

(a) It shall be unlawful for any person in the offer or sale of any securities by the use of any means or instruments of transportation or communication in interstate commerce or by the use of the mails, directly or indirectly—

(1) to employ any device, scheme, or artifice to defraud, or

securities transactions. There, the Supreme Court held that intent was not an element of the offense.[2]

Under sec. 551.58, Stats., "any person who wilfully violates" a provision of ch. 551 is guilty of a criminal offense.[3] Since this statute makes the violation committed under sec. 551.41, Stats., a crime, the issue here is whether the use of the word "wilfully" is included to require intent to defraud as an element of the offense. No Wisconsin case law speaks directly to this point.

However, Wisconsin case law has dealt with the meaning of the word "wilful" as used in a previous Wisconsin statute, sec. 189.23 (2) (h), Stats. (1929), concerned with criminal sanctions for securities fraud. In *Boyd v. State,* 217 Wis. 149, 163, 258 N.W. 330, 335–36 (1935), our supreme court held:

The trial court stated in connection with the Blue Sky Law counts that the question of intent did not enter into them. It is claimed that this instruction was erroneous

(2) to obtain money or property by means of any untrue statement of a material fact or any omission to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, or

(3) to engage in any transaction, practice, or course of business which operates or would operate as a fraud or deceit upon the purchaser.

[2] Temby cites several federal cases in support of his belief that 15 U.S.C. § 77q(a) requires specific intent to defraud. However, we note that all of these cases were decided before the United States Supreme Court decision in *Aaron v. Securities and Exchange Commission,* 446 U.S. 680 (1980). In *Aaron,* the Supreme Court specifically stated that they were granting certiorari to resolve the conflict among the federal courts as to whether scienter was a necessary element of an offense under the statute. *Id.* at 686.

[3] Section 551.58, Stats., states an exception for violations of sec. 551.54, Stats., regarding misleading filings. In order for a violation of sec. 551.54, Stats., to be criminal, the person must have committed the violation "knowing or having reasonable cause to believe that the statement made was false or misleading in any material respect."

particularly because of inclusion of par. (h) of sec. 189.23 (2), Stats. 1929, of the clause "who, in any other respect, wilfully violates or fails to comply with any of the provisions of this chapter." It was recently stated by this court in *Hobbins v. State,* 214 Wis. 496, 505, 253 N.W. 570, that "if one knowingly commits an act prohibited by a criminal statute he necessarily commits that act wilfully. He is not exempted from criminal responsibility because he considered the prohibition not wrongful. The legislature, in enacting the statute, determined the quality of the act in that respect." So here, as the defendant knowingly committed the acts charged as violations of the sections of the Blue Sky Law involved, his acts were done wilfully, and the intent he entertained when he committed the acts, other than an intent not to commit them, cannot excuse his violation of the statute. Where the legislature has prohibited, under a penalty, the doing of a specific act, "the doing of the inhibited act constitutes the crime, and . . . the only fact to be determined in these cases is whether the defendant did the act." 8 R.C.L. p. 62; 16 C.J. pp. 76, 77; *Horning v. District of Columbia,* 254 U.S. 135, 41 Sup. Ct. 53; *Shevlin-Carpenter Co. v. Minnesota,* 218 U.S. 57, 30 Sup. Ct. 663; *U.S. v. Balint,* 258 U.S. 250, 42 Sup. Ct. 301.

It is presumed that the legislature has in mind previous statutes dealing with the same subject matter when it enacts a new provision. *State v. Hungerford,* 84 Wis. 2d 236, 251, 267 N.W.2d 258, 266 (1978). "[I]n the absence of any express repeal or amendment therein, the new provision [is] enacted in accord with the legislative policy embodied in the prior statutes, and they should all be construed together." *Id.* at 252, 267 N.W.2d at 266–67, quoting 2 A. Sutherland, *Statutory Construction,* § 51.02 at 290 (4th ed., Sands, 1973). We conclude that given the construction of the term "wilfully" under the prior statute, that had the legislature wanted to require specific intent to defraud, it would have explicitly stated so.

The interpretation of similar statutes by the courts of other states also supports our decision. *See State ex rel.*

*E.R. v. Flynn,* 88 Wis. 2d 37, 44, 276 N.W.2d 313, 316–17 (Ct. App. 1979). In *People v. Cook,* 279 N.W.2d 579, 586 (Mich App. 1979), the Michigan Court of Appeals, construing a similar statute, held:

To wilfully violate subsection 101(2) this defendant must have intended the omission which was found to be material and misleading. To wilfully offend subsection 101 (3) he must have intended to engage in the course of conduct found to operate as a fraud. In addition, this defendant must have known or recklessly failed to discover facts that rendered his conduct violative of those subsections. It is insufficient that he could have discovered the facts by due care. *On the other hand, he need not have acted with the conscious purpose to mislead or defraud.* It is also unnecessary that he know his conduct violated the law. Like any element of a crime, knowledge and intent can be inferred. [Emphasis added; footnote omitted.]

In *State v. Cox,* the Washington Court of Appeals interpreted two statutes almost identical to the two Wisconsin Statutes. There, the court held that intent to defraud is not a necessary element of the offense.

We hold that the instruction the court gave was a proper one. However, because of the improperly admitted deposition, we must reverse the decision of the trial court and remand for a new trial.

*By the Court.*—Judgment reversed and cause remanded for proceedings not inconsistent with this opinion.