STATE of Utah, Plaintiff and Respondent,

v.

C. Dean LARSEN, Defendant and Petitioner.

No. 920114.

Supreme Court of Utah.

Dec. 17, 1993.

**10.** *Downey State Bank v. Major–Blakeney Corp.,* 545 P.2d 507, 509 (Utah 1976).

**11.** *Schwenke,* 849 P.2d at 576.

R. Paul Van Dam, Atty. Gen., David B. Thompson, Asst. Atty. Gen., Salt Lake City, for plaintiff and respondent.

Larry R. Keller, John T. Nielsen, David L. Arrington, Joel G. Momberger, Jon E. Waddoups, Melyssa D. Davidson, Salt Lake City, for defendant and petitioner.

## ON CERTIORARI TO THE UTAH COURT OF APPEALS

ZIMMERMAN, Justice:

C. Dean Larsen petitioned for a writ of certiorari, seeking review of a Utah Court of Appeals decision upholding the district court's rulings on two issues relating to his conviction on eighteen counts of criminal securities fraud. Larsen contends that the trial court erred in refusing to instruct the jury that the intent to defraud, deceive, or manipulate is an element of a criminal violation of sections 1(2) and 21 of the Utah Uniform Securities Act. *See* Utah Code Ann. §§ 61-1-1(2), -21. Larsen also complains that the trial court erroneously allowed a State expert to testify as to the "materiality" of information that Larsen allegedly had failed to disclose to investors. We affirm his convictions.

The facts of this case are detailed in the court of appeals' opinion in *State v. Larsen,* 828 P.2d 487, 488–90 (Utah Ct.App.1992). To summarize, Larsen was charged with, and convicted of, eighteen counts of securities fraud under sections 61-1-1(2) and 61-1-21 of the Code. These convictions arose out of his actions while president of a real estate development company in which others had invested. Larsen's criminal acts included his failure to inform investors of material information related to the company, misrepresentations of material facts regarding the com-

pany's financial status, and related acts of dishonesty. Larsen appealed to the court of appeals, which affirmed his convictions. 828 P.2d at 496. We granted certiorari to consider his claims of legal error.

Larsen first asserts that the trial court erroneously instructed the jury as to the applicable law. He alleges that the trial court improperly refused to give portions of his proposed instructions concerning the elements of and defenses to criminal securities fraud. The omitted portions, in substance, would have instructed the jury that to be guilty of a criminal violation of section 61-1-1(2), Larsen must have acted with the specific intent to defraud and that a representation made "in good faith constitutes a complete defense to a charge of securities fraud."

■ The propriety of the instructions given hinges on the correct interpretation of sections 61-1-1(2) and -21.[1] In particular, does a criminal violation of these sections require proof of an intent to defraud, deceive, or manipulate? The correct interpretation of a statute is a question of law and is reviewed for correctness. *State v. James,* 819 P.2d 781, 796 (Utah 1991); *Ward v. Richfield City,* 798 P.2d 757, 759 (Utah 1990).

■ When faced with a question of statutory construction, this court first examines the plain language of the statute. *Schurtz v. BMW of N. Am., Inc.,* 814 P.2d 1108, 1112 (Utah 1991); *Bonham v. Morgan,* 788 P.2d 497, 500 (Utah 1989) (per curiam). Section 61-1-1(2) states in relevant part:

> It is unlawful for any person, in connection with the offer, sale, or purchase of any security, directly or indirectly to:
>
> . . . .
>
> (2) make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circum-

---

[1] In this case, this court is concerned only with the proper construction of a portion of section 61-1-1, specifically subsection 1(2). We therefore do not address the question of whether subsections 1(1) and 1(3) require scienter. *Cf. Aaron v. Securities & Exch. Comm'n,* 446 U.S. 680, 695–702, 100 S.Ct. 1945, 1954–1959, 64 L.Ed.2d 611 (1980).

stances under which they are made, not misleading.

Utah Code Ann. § 61–1–1(2).[2] This section's standards govern both civil and criminal liability. To ascertain the elements of a criminal violation, however, this section must be read in conjunction with section 61–1–21, which specifies the requisite mental state and penalties for a criminal violation. Utah Code Ann. § 61–1–21. Section 61–1–21 provides in pertinent part:

> Any person who *willfully* violates any provision of this chapter [including section 61–1–1(2) ] . . . or who *willfully* violates any rule or order under this chapter . . . shall upon conviction be fined not more than $10,000 or imprisoned not more than three years, or both.

Utah Code Ann. § 61–1–21 (emphasis added). The plain language of section 61–1–21 requires that to be liable for a criminal violation of section 61–1–1(2), the defendant must have acted "willfully" in misstating or omitting material facts. *Id.* Larsen asks this court to interpret "willfully" as requiring "scienter," the intent to deceive, manipulate, or defraud, as defined by the United States Supreme Court in *Ernst & Ernst v. Hochfelder*, 425 U.S. 185, 96 S.Ct. 1375, 47 L.Ed.2d 668 (1976), a rule 10b–5 case.

■ In determining whether we can, or should, give "willfully" such a construction, we first look to the statutory definition of "willful." The legislature has indicated that a person acts willfully when it is his or her "desire to engage in the conduct that cause[s] the result." Utah Code Ann. § 76–2–103. Nothing in this definition requires scienter.[3] Moreover, a brief survey of the Code confirms that the Utah legislature knows how to require scienter, if it so desires, by including specific language to that effect. *See, e.g., id.* §§ 23–20–27, 41–1a–1319, 76–6–506.2, 76–10–706 & –1006.

Failing to find support in the express terms of the Code, Larsen suggests that the scienter requirement is an "independent element" of the offense. Stated another way, although it is not apparent from the language of the provision, Larsen contends that we should read the scienter requirement into the statute. We have rejected similar attempts to engraft a judicially created intent requirement upon the plain language of a criminal statute. *E.g., State v. Delmotte*, 665 P.2d 1314, 1315 (Utah 1983) (holding offense of writing bad check does not require intent to defraud). Perhaps more on point, other states have rejected attempts to import scienter into analogous securities-fraud statutes. *See, e.g., People v. Johnson*, 213 Cal. App.3d 1369, 262 Cal.Rptr. 366, 369 (Ct.App. 1989); *State v. Temby*, 108 Wis.2d 521, 322 N.W.2d 522, 526 (Ct.App.1982). This court will not affix new "independent requirements" to an otherwise clear and constitutional statute.

Although the language of the statute effectively disposes of the issue, Larsen asserts that this court should look beyond the plain language of the Utah Uniform Securities Act

---

**2.** In 1963, the Utah legislature substantially adopted the Uniform Securities Act, which had been developed by the National Conference of Commissioners on Uniform State Laws. *See* Utah Code Ann. §§ 61–1–1 to –30; Uniform Securities Act, *reprinted in Blue Sky Laws 1993* 289–374 (1993). *See generally* Wallace R. Bennett, *Securities Regulation in Utah: A Recap of History and the New Uniform Act*, 8 Utah L.Rev. 216, 227–28 (1963). The Uniform Act contains an anti-fraud provision, section 101, modeled after, and with language taken from, section 17(a) of the Securities Act of 1933 and rule 10b–5, which was promulgated pursuant to section 10(b) of the Securities Exchange Act of 1934. *See* Uniform Securities Act § 101, cmt. .01; *Blue Sky Laws*, at 295. The Utah legislature incorporated section 101 into the Utah Code as section

61–1–1 without significant modification. *Compare* Utah Code Ann. § 61–1–1 *with* Uniform Securities Act § 101.

**3.** To act willfully in this context means to act deliberately and purposefully, as distinguished from merely accidentally or inadvertently. *Cf. United States v. Hairston*, 819 F.2d 971, 974 (10th Cir.1987). Willful, when applied to the intent with which an act is done or omitted, implies a willingness to commit the act, which, in this case, is the misstatement or omission of a material fact. Willful does not require an intent to violate the law or to injure another or acquire any advantage. *See generally State v. Tarzian*, 665 P.2d 582, 585 (Ariz.Ct.App.1983).

to the legislative intent. Section 61–1–27 of the Code provides that Utah's Uniform Securities Act "may be construed so as to effectuate its general purpose to make uniform the law of those states which enact it and to coordinate the interpretation and administration of this chapter with the related federal regulation." Utah Code Ann. § 61–1–27. Larsen asserts that this section was intended to bind state judicial interpretations of Utah's antifraud provisions to the United States Supreme Court's interpretations of similar federal securities provisions. Specifically, Larsen argues that the language similarities between section 61–1–1(2) and rule 10b–5 of the Securities and Exchange Commission ("SEC"), when viewed in light of the intent requirement embodied in section 61–1–27, require this court to interpret Utah's antifraud provision in conformity with the Supreme Court's decision in *Ernst & Ernst v. Hochfelder,* 425 U.S. 185, 96 S.Ct. 1375, 47 L.Ed.2d 668 (1976). *Hochfelder* held, inter alia, that "scienter," or an intent to deceive, manipulate, or defraud, must be proved before civil liability can be imposed under rule 10b–5. *See id.,* 425 U.S. at 187, 96 S.Ct. at 1378, 47 L.Ed.2d at 674; *Aaron v. Securities & Exch. Comm'n,* 446 U.S. 680, 692, 100 S.Ct. 1945, 1953, 64 L.Ed.2d 611 (1980). Larsen's argument is facially legitimate and requires response.

We first examine *Hochfelder*'s reasoning. The issue before the *Hochfelder* court was "whether a private cause of action for damages [would] lie under § 10(b) and Rule 10b–5 in the absence of any allegation of 'scienter'—intent to deceive, manipulate, or defraud." *Id.* The SEC promulgated rule 10b–5[4] pursuant to powers vested in it by section 10(b)[5] of the Securities Exchange Act of 1934 ("1934 Act"). *Id.* at 195, 96 S.Ct. at 1381. The Court ultimately determined that scienter is required because the language of section 10(b)—the statutory authority upon which rule 10b–5 is grounded—implicitly limited the SEC's power to promulgate an implementing rule to one that required scienter. *Id.* at 213–14, 96 S.Ct. at 1390–91; *see also Aaron,* 446 U.S. at 690, 100 S.Ct. at 1952; 2 Thomas Lee Hazen, *The Law of Securities Regulation* § 13.4, at 81 (2d ed. 1990).

In contrast to rule 10b–5, Utah's securities fraud provision, section 61–1–1(2), does not operate against a background of limiting statutory authority. The interpretation we give to section 61–1–1(2) of the Utah Code is therefore not circumscribed by the dispositive language of section 10(b) of the 1934 Act. In that respect, section 61–1–1(2) of the Code atavistically resembles, not rule 10b–5, but section 17(a)(2) of the Securities Act of 1933, which the *Aaron* Court declined to interpret as requiring scienter. 446 U.S. at 697, 100 S.Ct. at 1956.[6] Because of this critical difference, *Hochfelder* is not particularly helpful in interpreting Utah's analogue to rule 10b–5.[7]

---

4. 17 C.F.R. § 240.10b–5.

5. 15 U.S.C. § 78j(b).

6. Section 17(a) provides:

It shall be unlawful for any person in the offer or sale of any securities by the use of any means or instruments of transportation or communication in interstate commerce or by the use of the mails, directly or indirectly—

  (1) to employ any device, scheme or artifice to defraud, or

  (2) to obtain money or property by means of any untrue statement of a material fact or any omission to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, or

  (3) to engage in any transaction, practice, or course of business which operates or would operate as a fraud or deceit upon the purchaser.

15 U.S.C. § 77q(a). The Supreme Court in *Aaron* stated "that the language of § 17(a) requires scienter under § 17(a)(1), but not under § 17(a)(2) or § 17(a)(3)." 446 U.S. at 697. As we are dealing here only with section 61–1–1(2) of the Utah provision, which is analogous to section 17(a)(2), we do not reach the question of a scienter requirement *vel non* under section 61–1–1(1) or –1(3).

7. Even if *Hochfelder* were directly on point, the committee that promulgated the Uniform Securities Act has indicated that the Act, in most cases including this one, was not intended to bind state courts to related federal interpretations. *See* Uniform Securities Act § 501 cmt. 3 (1985), *reprinted in Blue Sky Laws 1993* 428 (1993). In 1985, the committee specifically indicated that it "did not intend that state courts be bound to

Further, even if we were to assume that rule 10b–5 and section 61–1–1(2) are direct parallels, as Larsen suggests, he fails to recognize that the Utah legislature has not required the courts to interpret the Utah Uniform Securities Act in lockstep with federal decisions. Section 61–1–27, on which Larsen relies for his lockstep mandate, seems to make uniformity with other states more important than uniformity with interpretations of analogous federal statutes. *See* Utah Code Ann. § 61–1–27. Section 61–1–27 provides that Utah's Uniform Securities Act "may be so construed as to effectuate its general purpose to *make uniform the law of those states* which enact it and to coordinate the interpretation and administration of this chapter with the related federal legislation." Utah Code Ann. § 61–1–27 (emphasis added). Although the meaning of "coordinate" as it relates to federal legislation is not entirely clear, the mandate "to make uniform" the law of the enacting states is unmistakable. Uniformity with a significant majority of states is achieved only by a "no scienter" construction of the provision. *See Johnson,* 213 Cal.App.3d 1369, 262 Cal.Rptr. at 369; *People v. Whitlow,* 89 Ill.2d 322, 60 Ill.Dec. 587, 433 N.E.2d 629, 634, *cert. denied,* 459 U.S. 830, 103 S.Ct. 68, 74 L.Ed.2d 68 (1982); *People v. Mitchell,* 175 Mich.App. 83, 437 N.W.2d 304, 307 (Ct.App.1989), *appeal denied,* 433 Mich. 895, 446 N.W.2d 830 (1990); *State v. Fries,* 214 Neb. 874, 337 N.W.2d 398, 405 (1983); *State v. Ross,* 104 N.M. 23, 715 P.2d 471, 474 (Ct.App.1986); *State v. Cox,* 17 Wash.App. 896, 566 P.2d 935, 938 (1977), *cert. denied,* 439 U.S. 823, 99 S.Ct. 90, 58 L.Ed.2d 115 (1978); *Temby,* 322 N.W.2d at 526.

As a policy argument for his position, Larsen argues that without a scienter requirement section 61–1–1(2) raises the specter of strict liability, or in other words, a fear that accounting firms and other professionals will be held liable for "good faith oversight" or failure "to discover and disclose a material fact." Larsen predicts that this threat of strict liability will preclude "responsible individuals and entities" from providing securities services in the future. This argument completely ignores the willfulness requirement of section 61–1–21 and misuses the term "strict liability."

An individual must act willfully to be criminally liable under the statute. This means that the prosecution must prove beyond a reasonable doubt that the accused "desire[d] to engage in the conduct or cause the result." Utah Code Ann. § 76–2–103. This highly culpable mental state is not consistent with "strict liability," as that term is traditionally used. *See Black's Law Dictionary* 1422 (6th ed. 1990); 1 *Wharton's Criminal Law* § 23, 123 (15th ed. 1993). Further, a "no scienter" reading of the statute will affect only those professionals who willfully omit or misstate material facts. This result seems to be exactly what the legislature intended. If the legislature had wanted scienter for perceived public policy reasons, it could have included that requirement. It did not, and we will not.[8]

Larsen's second challenge is based on his claim that the trial court erred by allowing a securities expert for the State, Sherwood Cook,[9] to testify as to the "materiality" of information Larsen allegedly had omitted from securities-related documents. Larsen's argument before this court is somewhat diffuse. Nevertheless, he appears to be asserting that the trial court should not have admitted Cook's expert testimony on materiality under Utah Rule of Evidence 702 because the testimony purportedly expressed the "le-

---

follow [*Hochfelder*]." *Id.* To the extent that Larsen relies on a perceived mandate in the Uniform Securities Act favoring state adherence to federal interpretations, his analysis is lacking in support.

**8.** Because a finding of scienter is not a prerequisite to criminal liability under section 61–1–1(2), the trial court properly refused to instruct the jury that good faith is a complete defense to criminal liability. *Cf. In re University Med. Ctr.,* 973 F.2d 1065, 1087–88 (3d Cir.1992); *Barnett v. United States,* 594 F.2d 219, 222 (9th Cir.1979).

**9.** Cook was introduced to the jury as a former Utah securities regulation official and the top securities administrator in Nevada.

gal conclusion" that Larsen's omissions violated section 61–1–1(2), the statute prohibiting material omissions or misstatements.

■ We first state the proper standard of review. The trial court has wide discretion in determining the admissibility of expert testimony, and such decisions are reviewed under an abuse of discretion standard. *State v. Span,* 819 P.2d 329, 332 n. 1 (Utah 1991); *Dixon v. Stewart,* 658 P.2d 591, 598 (Utah 1982); *State v. Clayton,* 646 P.2d 723, 726 (Utah 1982); *see* 2 Gregory P. Joseph & Stephen A. Saltzburg, *Evidence in America: The Federal Rules in the States* ch. 51, § 51.3, at 2 & n. 4 (1987) [hereinafter Joseph and Saltzburg]; *accord Wade v. Haynes,* 663 F.2d 778, 784 (8th Cir.1981), *aff'd,* 461 U.S. 30, 103 S.Ct. 1625, 75 L.Ed.2d 632 (1983). Under this standard, we will not reverse unless the decision exceeds the limits of reasonability. *State v. Hamilton,* 827 P.2d 232, 239–40 (Utah 1992); *Shurtleff v. Jay Tuft & Co.,* 622 P.2d 1168, 1173 (Utah 1980).

■ In general, the admissibility and limits of expert testimony are governed by rules 701 through 704 of the Utah Rules of Evidence. Rule 702 provides:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise.

Utah R.Evid. 702. Under rule 702, the question that must be posed prior to the admission of any expert evidence is whether, "on balance, the evidence will be helpful to the finder of fact." *State v. Rimmasch,* 775 P.2d 388, 398 n. 8 (Utah 1989); *see Dixon,* 658 P.2d at 598.

■ In determining "helpfulness," the trial court must first decide whether the subject is within the knowledge or experience of the average individual. *Dixon,* 658 P.2d at 597. It is not necessary that the subject of the testimony be so erudite or arcane that the jurors could not possibly understand it without the aid of expert testimony, nor is it a requirement that the subject be beyond the comprehension of each and every juror. *See id.*

■ Here, we agree with the court of appeals' statement that expert testimony may be appropriate in "securities fraud cases because the technical nature of securities is not within the knowledge of the average layman or a subject within the common experience and would help the jury understand the issues before them." *Larsen,* 828 P.2d at 492–93. In his testimony, Cook was expressing his opinion that some of the material that Larsen had omitted from the securities documents could have been important or significant to an investor.[10] We do not find that the trial court abused its discretion in determining that such testimony would be helpful to the jury.[11]

■ Larsen claims that even if the subject of this testimony might have been beyond the experience of the average individual, Cook's testimony regarding materiality was not "helpful" because it transgressed into the area reserved for the jury by instructing the jury as to what legally constitutes material information. Larsen focuses on Cook's occasional use of the term "material" during his expert testimony. Specifically, Larsen argues that Cook could have given his testimony without using the term "material" and that by using the term, he moved from arguably admissible opinion evidence to an "inadmissible legal conclusion" because

10. Cook did not, as Larsen suggests, testify that Larsen was guilty, nor did Cook testify that, as a matter of law, the facts satisfied the legal standard of materiality.

11. Unlike *Ashton v. Ashton,* 733 P.2d 147, 153 (Utah 1987), the present case does not involve expert testimony regarding legal or factual issues not before the court or jury. The *Ashton* court upheld the trial court's exclusion of an attorney's proposed testimony on the legal effect of a joint tenant's transfer of property. *Id.* at 153. In other words, the proposed testimony in *Ashton* was intended solely to explain the applicable law, which did not aid the jury in resolving the factual disputes.

the statute in question is framed in terms of material information. *See* Utah Code Ann. § 61–1–1(2).

In the present case, the use of the term "material" presents unique problems because it has two possible referents. First, in ordinary parlance materiality means "important" or "significant." *Oxford American Dictionary* 547 (1980). Used in this context, "material" signifies something that an individual would want to know in making an important decision. One could testify about this concept without using the term "material" by stating that the information allegedly omitted is important or significant. Presumably, such testimony, assuming it was otherwise helpful and admissible, would not be objectionable as expressing a legal conclusion.

The second, and legal, usage of the term "material" comes from the Utah statute under which Larsen was prosecuted and from securities law in general. The law uses the term "material" in defining what information must legally be disclosed. Larsen's basic claim is that when Cook used the disputed term, the trial court was allowing him to tell the jury that the omitted information legally constituted material information within the meaning of the statute, and Cook was thereby instructing the jury that Larsen was guilty. Larsen suggests, in fact, that Cook's testimony would have been proper if he had used a word other than "material."

Cook certainly should have avoided employing the specific term "material." However, his limited use of that word, under the circumstances, does not mandate the conclusion that he was improperly instructing the jury on the law.

We think that Larsen's analysis, hanging as it does on one word that has two almost identical meanings, is unduly formalistic. The jury was charged with making the ultimate determination of whether the statements made or facts omitted by Larsen were factually material, i.e., whether they were likely to influence a reasonable investor. *Cf. TSC Indus. Inc. v. Northway, Inc.,* 426 U.S. 438, 450, 96 S.Ct. 2126, 2132, 48 L.Ed.2d 757

(1976) ("[I]ssue of materiality may be characterized as a mixed question of law and fact."). Given that "materiality" has a popular meaning bearing directly on the factual issue before the jury and that Cook's testimony, when read in context, seems to use "material" as a synonym for "important," we do not believe that the trial court abused its discretion by admitting Cook's testimony.

■ Moreover, materiality, as it relates to the importance of the omitted information, was an "ultimate issue." Under Utah Rule of Evidence 704, expert testimony is not objectionable solely because it encompasses the ultimate issue to be decided by the jury. Rule 704 provides in pertinent part that "testimony in the form of an opinion or inference otherwise admissible is not objectionable because it embraces an ultimate issue to be decided by the trier of fact." Utah R.Evid. 704. Larsen's semantic characterization of Cook's testimony as a legal conclusion does not, without more, move the testimony outside the scope of this ultimate-issue rule.

■ Larsen correctly asserts that rule 704 does not make expert testimony *admissible* simply because it expresses an opinion regarding an ultimate issue. By the same token, however, rule 704 does not make expert testimony *inadmissible* simply because it expresses an opinion on the ultimate issue, as Larsen seems to suggest. *See Span,* 819 P.2d at 332 n. 1. As one commentator noted, "Since the adoption of rule 704, courts have generally not hesitated to follow it and to permit expert testimony directly concerning the critical issue before the trier of fact." Joseph & Saltzburg, ch. 53, § 53.3, at 2; *see People v. Rivers,* 727 P.2d 394, 400 (Colo.Ct.App.1986) (holding that pathologist's opinion testimony indicating attack occurred in two stages is not improper because it embraced an ultimate issue); *see also United States v. Cohen,* 518 F.2d 727, 737 (2d Cir.) (holding that trial court did not abuse it discretion by admitting expert testimony on the reach of the concepts of "underwriter" and "materiality" in securities fraud case), *cert. denied,* 423 U.S. 926, 96 S.Ct. 270, 271, 46 L.Ed.2d 252 (1975).

The bottom line is that the question of materiality as it relates to the importance or significance of the omitted information is, at least on one level, a factual issue to be determined by the jury. Rule 704 permits Cook to express an opinion regarding the ultimate resolution of that disputed issue as long as that testimony is otherwise admissible under the rules of evidence. *See* Joseph & Saltzburg, ch. 53, § 53.3, at 3. Under the circumstances, we are not persuaded that the trial court abused its discretion in permitting Cook's testimony.[12]

■ Finally, even if the admission of Cook's testimony couched in terms of materiality had been in error, Larsen has not convinced us that the error would have been harmful. The trial court correctly admonished the jury as to the relative roles of expert testimony and opinion evidence and instructed the jury to accord no unusual deference to an expert's opinions. The trial court also gave careful instructions regarding the legal definition and requirements of the term "material" as used in the statute. Taken together, these instructions substantially reduced whatever slight risk of confusion Cook's use of the term "material" might have engendered in the jury. Given the trial court's adequate instructions to the jury, we find that if any error had occurred in admitting the expert testimony, it would have been harmless.

The convictions are affirmed.

HOWE, Associate C.J., DURHAM, J., and J. DENNIS FREDERICK and JOHN A. ROKICH, District Judges, concur.

HALL, C.J., and STEWART, J., having disqualified themselves, do not participate herein; FREDERICK and ROKICH, District Judges, sat.

---

12. We do not suggest that the trial court must allow expert testimony regarding materiality, especially testimony utilizing the term "material." We simply hold that the trial court did not abuse its discretion in allowing the limited testimony in this case.

We also note that an integral element of a rule 702 determination to admit expert evidence is a balancing of the probativeness of the evidence against its potential for unfair prejudice. *State v. Rimmasch,* 775 P.2d 388, 398 n. 8 (Utah 1989). This balancing mimics that under rule 403 and is necessary to a determination of "helpfulness." In the present case, Larsen did not specifically object to the use of "material" on the ground

that the probative value of the usage was substantially outweighed by the potential for unfair prejudice or confusion of the issues. *See* Utah R.Evid. 403. Larsen's objections, although citing to rule 702, addressed only the contention that materiality in general was not a proper subject for expert testimony. Trial counsel must state clearly and specifically all grounds for objection. *See* Utah R.Evid. 103(a)(1). Inasmuch as Larsen failed to assert a claim of prejudice at the trial court, that issue is not properly preserved for appeal. If Larsen had made such an objection, it might have merited serious consideration by the trial court.