2000 UT 54

**Pauline M. GREEN, Clerk/Auditor for Morgan County, Plaintiff, Appellee, and Cross–Appellant,**

v.

**Jan TURNER and Michael McMillan, individually and as Morgan County Commissioners, Defendants, Appellants and Cross–Appellees.**

No. 981485.

Supreme Court of Utah.

June 27, 2000.

Joseph E. Hatch, Eric P. Hartman, Salt Lake City, for Plaintiff.

Benson L. Hathaway, Jr., Richard J. Armstrong, Salt Lake City, for Defendants.

DURRANT, Justice.

¶ 1 The Morgan County Commission accused its clerk/auditor, Pauline M. Green, of failing to perform her statutorily mandated duties. The Commission hired an outside auditor to perform some of those duties. After conducting a public hearing, two of the three Morgan County Commissioners, Jan Turner and Michael McMillan, voted to "reduce" Green's salary by deducting the costs of hiring the outside auditor from Green's paychecks. Green petitioned for a writ of mandamus. The district court granted summary judgment in Green's favor, ordering the Commission to repay the amounts withheld from Green's salary. The court also ruled that Turner and McMillan owed a statutory penalty and were liable for Green's attorney fees. We affirm the district court's ruling regarding the deductions from Green's salary, but reverse its award of the penalty and attorney fees.

## BACKGROUND

¶ 2 Pauline M. Green was appointed Morgan County Clerk/Auditor in February 1996 after her predecessor resigned. She was subsequently elected to that position in November 1996 for a term of two years. Thereafter a dispute arose between Green and the Morgan County Commission concerning the performance of Green's official duties. The Commission asserted Green had failed, after numerous requests, to perform a number of her statutory duties. Specifically, the Commission accused Green of failing to prepare a budget for the 1997 tax year, which resulted in the State Auditor's Office withholding property tax distributions. The Commission also claimed that Green had failed to reconcile the County's books with those of the County Treasurer, that she had failed to work on a full-time basis, and that she had been frequently absent from the office.

¶ 3 The Commission retained the services of an independent accountant to prepare a budget for 1997, and allegedly incurred other costs related to Green's purported failure to perform her statutorily mandated duties. In June of 1997, after conducting a publicly noticed meeting, the Commission entered an order, set forth in the minutes as follows:

Commissioner McMillan moved that the direct costs that [are] being incurred supporting the Morgan County Clerk's Office be deducted from the Clerk's wages as the billing for services is received. When the board of county commissioners finds that the Clerk's Office can no longer meet statutory requirements that they employ an accountant to stay in compliance and that those direct costs be deducted from the clerk's wages the deduction will be distributed across the remaining pay periods for the year in which the charges are levied.

¶ 4 Turner and McMillan voted in favor of this motion. In response, Green filed a petition for an extraordinary writ in the form of mandamus. She accused Turner and McMillan of exceeding their authority as county commissioners. Turner and McMillan moved to dismiss. At a status conference, the motion to dismiss was converted to Green's motion for summary judgment for purposes of narrowing the legal issues prior to con-

ducting discovery. The court heard oral argument on the converted motion and ruled in favor of Green. It held that the Morgan County Commission had acted unlawfully in withholding portions of Green's salary. The court also held that Turner and McMillan were liable for payment of prejudgment interest, a statutory penalty of $500, and attorney fees in the amount of $10,000. The court imposed the penalty and awarded attorney fees based on Utah Code Ann. § 17–5–207, which permits assessment of penalties and damages against county commissioners who "willfully, fraudulently, or corruptly attempt[ ] to perform an act unauthorized by law." Turner and McMillan appeal both orders. Green cross-appeals from the court's refusal to grant a higher amount for attorney fees.

### DISCUSSION

■ ¶5 On appeal, Turner and McMillan argue that the district court erred in holding the Commission had no statutory authority to reduce Green's salary in the manner it did.[1] They also argue that the court improperly construed the meaning of the term "willfully" in Utah Code Ann. § 17–5–207 to justify its assessment of a $500 penalty and an award of attorney fees. Both of these questions are matters of statutory interpretation, which we review for correctness. *See Stephens v. Bonneville Travel, Inc.*, 935 P.2d 518, 519 (Utah 1997).

### I. DEDUCTIONS FROM GREEN'S SALARY

■ ¶6 Turner and McMillan argue that the Commission's act of making deductions from Green's salary falls within the scope of

Utah Code Ann. § 17–16–14, which provides as follows:

> The annual salaries of the officers of all counties in the state shall be fixed by the respective county legislative bodies, provided no changes shall be made in existing salaries of county officers until the county legislative body in a county desiring to change existing salaries of county officers shall first hold a public hearing at which all interested persons shall be given an opportunity to be heard.

Turner and McMillan argue that this provision grants the Commission express power to deduct amounts paid to an outside auditor from Green's regular paychecks. They also maintain that the inherent implied powers the Commission possesses, *see, e.g., Gardner v. Davis County*, 523 P.2d 865, 867 (Utah 1974), and its discretionary supervisory power over county officers, *see* Utah Code Ann. § 17–5–213,[2] allow it to make salary deductions for the alleged failure of an officer to perform statutory duties. We disagree.

¶7 Section 17–16–14 plainly pertains to the fixing of "annual salaries" of county officers. As a matter of common sense, a *fixed* annual salary describes prospective, yearly pay. If the salary is subject to alterations in the midst of its prescribed term, then it is no longer a fixed salary at all, but a variable wage, adjusted according to the county legislative body's judgment about the performance of the officer's duties.

¶8 Moreover, the apparent purpose of section 17–16–14 relates to budgetary concerns. Prior to 1969, section 17–16–14 contained detailed information setting maximum annual salary levels for the various statutorily defined offices, indexed to the class level of the county. *See, e.g.,* 1967 Utah Laws, ch. 32,

---

1. As a preliminary matter, Turner and McMillan assert that Green's petition for an extraordinary writ was an improper procedural mechanism for bringing her complaint before the district court. However, Turner and McMillan have failed to present any substantial argument indicating that the district court did not have jurisdiction to entertain the complaint. Therefore, we do not address it. *See Brinton v. IHC Hosps., Inc.*, 973 P.2d 956, 964 (Utah 1998).

2. The cited provision states that the county legislative body

may supervise the official conduct of all county officers and officers of all precincts, districts, and other subdivisions of the county (except municipal corporations); see that they faithfully perform their duties, direct prosecutions for delinquencies, and when necessary require them to renew their official bonds, make reports, and present their books and accounts for inspection.

Utah Code Ann. § 17–5–213.

§ 1. It functioned in conjunction with the former section 17–16–15, which directed the county commissions to meet biennially for the purpose of fixing the specific salary levels.[3] In 1969, section 17–16–15 was repealed. The general requirements relating to the timing of meetings to fix annual salaries were streamlined, simplified, and moved to section 17–16–14. This evidently allowed county legislative bodies more flexibility in the process by which they fixed annual salaries.

¶ 9 Despite the amendments, the essential nature of the provision has not been altered. It governs the method by which annual salaries are fixed. In this case, the Commission attempted to employ the statute as a punitive and remedial measure, sanctioning Green for alleged abuses of her office and seeking to recoup the costs of hiring an outside auditor. There is no indication the provision was intended to serve such purposes. Thus, the Commission's actions were not consonant with the evident scope of section 17–16–14.

■ ¶ 10 We likewise find Turner's and McMillan's reliance upon the Commission's inherent and discretionary powers unavailing. If the Commission's authority under its generalized powers of supervision allowed discretionary deductions from an official's paycheck, the effect would be to eviscerate the requirement of section 17–16–14 that annual salaries be fixed. Moreover, the entire constitutional and statutory scheme defining the relevant spheres of authority of county officials would be jeopardized if we adopted Turner's and McMillan's interpretation. Taken to its logical conclusion, such a construction would allow county legislative bodies to directly hire persons to replace any elected official with whom they are displeased. We directly rejected this type of manipulation in *Salt Lake County Commission v. Salt Lake County Attorney*, 1999 UT 73, ¶ 21, 985 P.2d 899, 907 (holding county may not delegate statutory duties of county attorney to private counsel except in narrowly defined circumstances).[4]

¶ 11 Therefore, we affirm the district court's grant of summary judgment with respect to its interpretation of section 17–16–14. The Commission exceeded its statutory authority when it deducted amounts from Green's paychecks for the purpose of paying the costs of hiring an outside person to perform her official duties.

## II. STATUTORY PENALTY AND ATTORNEY FEES

■ ¶ 12 The district court relied on Utah Code Ann. § 17–5–207 to assess a $500 penalty against Turner and McMillan and to award Green $10,000 in attorney fees. That section reads as follows:

> Any county commissioner who refuses or neglects to perform any duty imposed upon him without just cause therefor or willfully violates any law provided for his government as such officer, or who, as commissioner, *willfully, fraudulently, or corruptly attempts to perform an act unauthorized by law* shall, in addition to the penalty provided in the penal code, *forfeit to the county $500 for every such act*, to be recovered on his official bond, *and shall be further liable* on his official bond *to any person injured thereby for all damages sustained.*

Utah Code Ann. § 17–5–207 (emphasis added). The district court held that, based on

---

**3.** The relevant text of this section provided as follows:

> The board of county commissioners shall biennially, at a meeting held at least six months prior to the election of county officers, fix and determine the salaries of county officers, for whom maximum salaries are fixed, for the term next succeeding; provided that the salaries of such officers shall not be diminished or increased for the term for which they were elected and shall have qualified . . . .

Utah Code Ann. § 17–16–15 (repealed 1969 Utah Laws, ch. 41, § 2).

**4.** Although the facts of this case have not been sufficiently developed to allow a judgment as to the applicability of other statutory provisions, we note there are specifically defined methods for sanctioning county officials who fail to perform their duties and for obtaining remedies for damages caused by their unlawful actions. *See, e.g.,* Utah Code Ann. § 17–18–1(4)(c) (authorizing county attorney to "proceed against any officer and sureties under this subsection for any neglect of duty"); *id.* §§ 77–6–1 to –9 (judicial proceedings to remove officers not subject to impeachment); *id.* § 17–16–11 (requirements for official bonds).

the stipulated facts, Turner and McMillan had "willfully ... attempt[ed] to perform an act unauthorized by law." Additionally, the court concluded that Turner's and McMillan's liability in damages under this section extended to payment of Green's attorney fees.

¶ 13 In holding Turner and McMillan had acted willfully, the district court reasoned that the statute "does not require bad faith or malice, but only deliberate and purposeful conduct." The court cited *State v. Larsen,* 865 P.2d 1355, 1358 (Utah 1993) *Larsen* examined section 61–1–1(2) of Utah's Uniform Securities Act, which dealt with making untrue statements or omitting necessary facts in the context of offers, sales, or purchases of securities. Penalties for violation of that section were in turn prescribed by section 61–1–21, which at that time imposed criminal liability for "[a]ny person who willfully violates any provision of this chapter." *See id.,* 865 P.2d at 1358. With reference to the operation of section 61–1–21 in conjunction with subsection 61–1–1(2), we concluded that there was no "scienter" requirement inherently associated with the term "willfully," and that the trial court did not err in failing to instruct the jury that it must find an intent to "deceive, manipulate, or defraud." *See id.* at 1358–60; *see also Utah Dep't of Transp. v. Osguthorpe,* 892 P.2d 4, 8 (Utah 1995).

¶ 14 The district court in the instant case adopted the same reasoning in the context of section 17–5–207. Because Turner and McMillan clearly intended to deduct money from Green's salary, and because the district court determined that the Commission did not have the legal authority to make deductions from Green's salary, the court concluded that Turner and McMillan had "willfully" attempted "an act unauthorized by law."

¶ 15 Turner and McMillan argue that *Larsen* does not provide a correct analogy for usage of the term "willfully" in the context of section 17–5–207. Instead, they urge this court to look to the definition employed in the context of judicial conduct complaints. In *In re Worthen,* 926 P.2d 853, 869 (Utah 1996), we construed the grounds described in article VIII, section 13 of the Utah Constitution and in section 78–7–28(1) of the Utah

Code as permitting disciplinary action against a judge for "willful misconduct in office," or "willful and persistent failure to perform judicial duties." We held that the term "willful" consisted not merely of deliberate or volitional action, but that it necessarily included a specific element of wrongful purpose or scienter. "Otherwise, a judge could have been acting out of the best of motives, could have been negligent only in exceeding his or her powers, and still could be found guilty of 'willful misconduct.'" *Id.,* 926 P.2d at 868. The standard we adopted required a showing "that a judge intentionally committed a lawful act for an improper purpose or intentionally committed an unlawful act that the judge knew or should have known to be beyond his or her lawful power and committed the act for an improper purpose." *Id.* at 869.

¶ 16 In the instant case, section 17–5–207 does not expressly indicate whether the term "willfully" includes an implied scienter component. As both *Larsen* and *Worthen* illustrate, the inclusion or exclusion of a scienter requirement depends largely on the context and purposes of the statute or rule at issue. In *Osguthorpe,* for instance, we held no scienter requirement was implicated in a "willful" failure to respond to discovery. *See* 892 P.2d at 8; *see also Morton v. Continental Baking,* 938 P.2d 271, 276 (Utah 1997). On the other hand, in *Fibro Trust, Inc. v. Brahman Financial, Inc.,* 1999 UT 13, ¶¶ 14–15, 974 P.2d 288, 293–94 we revisited the Uniform Securities Act previously construed by *Larsen* and held that scienter *was* required with respect to a different subsection of the Act. Specifically, we concluded that section 61–1–1(1) of the Act, which proscribes any "device, scheme, or artifice to defraud," implicitly required scienter. We relied heavily on interpretations of the Uniform Act in other jurisdictions, which in turn had found a scienter requirement implicitly necessary to the concepts of "device," "scheme," or "artifice" to defraud. *See* 974 P.2d at 294. Thus, in two different cases treating precisely the same word in section 61–1–21 of the Uniform Securities Act, we attributed different interpretations. When interpreted in conjunction with subsection

61–1–1(2) of the Act, the term "willfully" did *not* include a scienter requirement, but when interpreted in conjunction with the preceding subsection 61–1–1(1), "willfully" *did* include such a requirement.[5]

¶ 17 Looking to the context and purposes of section 17–5–207, we are persuaded that *Worthen* and *Fibro Trust* provide better analogues than *Larsen.* The overall tenor and context of section 17–5–207 indicates it was directed at punishing bad faith misconduct. The other terms within the same phrase, "fraudulently," and "corruptly," invoke concerns about bad faith abuses of public office. *Cf. Fibro Trust,* 974 P.2d at 294 (holding contextual implication of "device," "artifice," and "scheme" necessarily required element of scienter). Even the first portion of the provision, which contains no specific requirement of willfulness, states that refusal or neglect to perform duties may be sanctioned only if the dereliction was without good cause.

¶ 18 Moreover, the concerns relating to judicial conduct provide a much closer analogue to the situation at hand than any criminal statutes. Both judges and county commissioners are public officials who have affirmative duties to act in the public interest. Although there are significant differences between the specific powers and responsibilities of judges and the specific powers and responsibilities of county commissioners, the fundamental concepts relating to acts beyond, or in derogation of, a judge's or commissioner's legal authority are fundamentally similar. If county legislative officials are unable to act upon affirmative duties in good faith and without fear of personal sanction or liability, they lose the capacity to act vigorously because they must constantly second-guess their actions. A mere mistake in judgment regarding the scope of authority could trigger serious personal consequences.[6] County legislative officials must necessarily exercise judgment and discretion in many of the decisions they undertake. We do not believe the legislature designed section 17–5–207 to function as an instrument for rendering commissioners personally liable for those good faith misjudgments. There is a substantial policy justification for assuming the legislature intended this provision to apply only to actions implicating an element of bad faith.[7] We therefore hold that the term "willfully," as used in section 17–5–207, implicitly requires a finding that the commissioner who "willfully ... attempts to perform an act unauthorized by law" either knew or should have known that the act was unauthorized by law. A mere mistake in legal judgment, which is all that has been shown thus far, based on the stipulated facts in this case, does not suffice for a finding of willfulness. The district court erred in its interpretation of section 17–5–207.[8]

---

5. *Fibro Trust* consequently defeats Green's contention that the term "willful" or "willfully" presumptively does not include a scienter requirement unless the legislature plainly indicates. Taken together, *Larsen* and *Fibro Trust* demonstrate that context is the critical factor when interpreting the term "willful" or "willfully" in a statute or rule.

6. This does not mean that the legislature or other drafter of rules governing the conduct of public officials cannot choose to hold public officials to a higher standard. Rather, it means there is a clear public policy basis for justifiable hesitation in imposing severe personal sanctions for good faith misjudgments as to scope of authority. For instance, *Worthen* acknowledged that judges are expected to educate themselves sufficiently to avoid departures, willful or otherwise, from the proper exercise of their authority. *See* 926 P.2d at 870. Accordingly, some of the standards permitting sanctions for judicial misconduct do not include a requirement that the misconduct be willful. *See id.* (noting that "conduct prejudicial to the administration of justice which brings a judicial office into disrepute," does not require a showing of willful "bad faith"). However, merely negligent judicial misconduct is presumptively less egregious and therefore entails a lesser sanction. *See id.* In the instant case, by contrast, the statute draws no distinction in the severity of the sanction for willfully, fraudulently, or corruptly attempting an unauthorized act.

7. We have often cited this same policy concern as the justification for granting governmental immunity to officials who are exercising discretionary functions. *See, e.g., Nelson v. Salt Lake City,* 919 P.2d 568, 574–76 (Utah 1996).

8. Because our interpretation of the term "willfully" resolves the issue of the assessment of penalties and damages under section 17–5–207, we need not address the question of whether "damages" under that same section may include attorney fees.

¶ 19 In conclusion, we affirm the court's summary judgment with respect to the issue of the Commission's authority to make deductions from Green's paycheck, but reverse on the issue of the statutory penalty and attorney fees.[9] We remand the case for further proceedings, if any.

¶ 20 Chief Justice HOWE, Associate Chief Justice RUSSON, Justice DURHAM, and Justice WILKINS concur in Justice DURRANT's opinion.

---

9. In her cross-appeal, Green asserts that the district court lacked a substantial evidentiary basis for reducing the award of attorney fees from approximately $15,700 to $10,000. In light of our decision that the district court improperly awarded attorney fees pursuant to section 17–5–207, Green's cross-appeal is rendered moot. Nor do we address Green's contention that there are alternate grounds for affirming the district court's award of attorney fees. While we may consider any alternate ground that was argued below for supporting the district court's decision, that alternate ground must be supported by an adequate record. The bare record in this case, consisting of stipulated facts, provides an inadequate basis for awarding attorney fees on any of the asserted alternate grounds.